# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| EILEEN M. HUSS, individually and as | ) | |
| Guardian for JOSEPH R. HUSS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07 C 7028 |
| | ) | Judge James B. Zagel |
| IBM MEDICAL AND DENTAL PLAN and | ) | Magistrate Judge Jeffrey Cole |
| R.A. BARNES in her capacity as Plan | ) | |
| Administrator, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants IBM Medical and Dental Plan ("the IBM Plan") and R.A. Barnes, in her

capacity as Plan Administrator ("Barnes") (collectively, "Defendants"), by and through their

attorneys, answer Plaintiff's Complaint as follows:

## PARAGRAPH NO. 1:

Plaintiff Eileen M. Huss ("Plaintiff") is a citizen of the State of Illinois, residing at 1619
Leabrook Lane, Wheaton, Illinois 60187, and at all times material has been the legal guardian for
her disabled son, Joseph R. Huss, Jr. ("Joseph").

## ANSWER:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations of Paragraph No. 1.

## PARAGRAPH NO. 2:

Defendant IBM Medical and Dental Plan ("the IBM Plan") is the legal entity through
which the IBM Corporation ("IBM") provides employee benefits to its active and retired
employees.  The benefits program offered by IBM is governed by the provisions of the
Employee Retirement Income Security Act of 1974 ("ERISA"), including the health insurance
benefits that are the subject of this action.  The IBM Plan address is 3808 Six Forks Road,
Raleigh, North Carolina 27609.  The IBM Plan regularly does business within the State of

Illinois in the course of providing and administering employee benefits for current and former employees of IBM.

**ANSWER:**

Defendants admit that the IBM Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 101 et seq. that provides certain medical benefits to eligible employees. Defendants further admit that International Business Machines Corp. ("IBM") does business in the State of Illinois and that the IBM Plan provides certain welfare benefits to employees of IBM. Defendants deny the remaining allegations of Paragraph No. 2.

**PARAGRAPH NO. 3:**

Defendant R.A. Barnes ("Barnes") is the plan administrator for the IBM Plan, operating out of the Office of the Plan Administrator, IBM Employees Services Center, 3808 Six Forks Road, Raleigh, NC 27609. Barnes administers employee benefits provided under the IBM Plan to current and former employees of IBM residing within the State of Illinois. Barnes has at all time material to this complaint acted as the duly authorized representative of the Plan, acting within the course and scope of her responsibilities as the plan administrator.

**ANSWER:**

Defendants deny the address of the IBM Plan is 3808 Six Forks Road, Raleigh, NC 27609. Defendants admit the remaining allegations of Paragraph No. 3.

**PARAGRAPH NO. 4:**

Jurisdiction is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), as this action asserts a claim for benefits and for equitable relief pursuant to 29 U.S.C. §§ 1024(b)(4), 1132(a)(1))B), 1132(a)(3)(A) and (B), 1132(c), 1133, 1132(g)(1), and 29 C.F.R. § 2560.503-1(g).

**ANSWER:**

The allegations of Paragraph No. 4 state legal conclusions requiring no answer by Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 5:**

Venue is proper in the Northern District of Illinois based upon 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), as the breach of the IBM Plan obligations giving rise to this action took place within the Northern District of Illinois; defendants' conduct was directed at the plaintiff while plaintiff was residing and physically located within the Northern District of Illinois and both IBM and the IBM Plan regularly conduct business within the Northern District of Illinois.

**ANSWER:**

The allegations of Paragraph No. 5 state legal conclusions requiring no answer by Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 6:**

On December 31, 2006, Eileen retired as an IBM employee after more than 30 years of service. During her employment and upon her retirement, Eileen was at all times material both a participant and a beneficiary under multiple iterations of the IBM Plan.

**ANSWER:**

Defendants admit the allegations of Paragraph No. 6.

**PARAGRAPH NO. 7:**

Eileen's son Joseph was born on August 8, 1981, while Eileen was an active, full-time employee of IBM. Since his birth, Joseph has suffered from a severe mental disability that renders him incapable of speech, and has at all times been completely dependent upon his parents for his support and well-being. Eileen has been a participant in the IBM Plan throughout Joseph's entire, 26-year lifetime. Joseph has been a dependent of Eileen and has been continuously eligible to enroll in the IBM Plan since his birth.

**ANSWER:**

Defendants admit Plaintiff was employed by IBM and that, due to such employment, Plaintiff was eligible for coverage under the IBM Plan. Defendants further admit, upon information and belief, that Plaintiff's son, Joseph, was born on August 8, 1981. Defendants deny Joseph has been continuously eligible to enroll in the IBM Plan since his birth. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 7.

**PARAGRAPH NO. 8:**

Although he has been continuously eligible to enroll in the IBM Plan during the Plan's open enrollment period each year, Joseph has not always been enrolled in the IBM Plan. Upon information and belief, Joseph was enrolled in the IBM Plan from the date of his birth through December 31, 1997. Since Joseph's initial enrollment in the IBM Plan and thereafter, the IBM Plan knew or should have known of Joseph's severe mental disability. Commencing on January 1, 1998, Joseph was enrolled in an employee benefit plan offered through his father's employer.

**ANSWER:**

Defendants admit that Plaintiff's son, Joseph, was enrolled in the IBM Plan from the date of his birth through December 31, 1997. Defendants lack knowledge or information sufficient to form a belief as to the truth of whether Joseph was enrolled in an employee benefit plan offered through his father's employment commencing January 1, 1998. Defendants deny the remaining allegations of Paragraph No. 8.

**PARAGRAPH NO. 9:**

In late 2005 or early 2006, Eileen contacted a Customer Service Specialist in the Employee Services Center of the IBM Plan to enroll Joseph in the IBM Plan. Under the IBM Plan, disabled adult dependents of IBM employees and retirees can continue to receive benefits under the IBM Plan so long as they meet the special eligibility requirements applicable to disabled dependents age 23 and older. Joseph met those requirements at the time of this call, and continues to meet each of those eligibility requirements. Eileen was told to call again six months prior to her retirement to ensure that Joseph was enrolled in the IBM Plan.

**ANSWER:**

Defendants state that the Plan speaks for itself and, to the extent the allegations of Paragraph No. 16 are inconsistent with the Plan language, Defendants deny the allegations. The allegations regarding whether "Joseph met the eligibility requirements at the time of this call and continues to meet each of those eligibility requirements" are legal conclusions requiring no answer by Defendants. To the extent these allegations purport to allege facts, Defendants deny same. Answering further, Defendants admit, upon information and belief, that Plaintiff contacted the IBM Employee Services Center in early 2006. Defendants lack knowledge or

information sufficient to form a belief as to the truth of whether Plaintiff was told to contact the

Employee Services Center six months prior to her retirement.

**PARAGRAPH NO. 10:**

Pursuant to the instructions she had received, on June 15, 2006, Eileen again contacted a Customer Service Specialist in the Employee Services Center of the IBM Plan to enroll Joseph in the IBM Plan. After Eileen provided him with the necessary information concerning Joseph, the Customer Service Specialist place Eileen on hold while he confirmed whether any additional steps were required to enroll Joseph as a participant in this IBM Plan. The Customer Service Specialist then told Eileen that no additional steps were required, and that he had enrolled Joseph in the IBM Plan with an effective date of January 1, 2007, the beginning of the next plan year.

**ANSWER:**

Defendants admit Plaintiff contacted the Employee Services Center on June 15, 2006

and, during that conversation, Joseph was added as a contact to Plaintiff's record. Defendants

lack knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph No. 10.

**PARAGRAPH NO. 11:**

On January 3, 2007, a few days after her retirement as an IBM employee, Eileen called the Customer Service Specialist to address a number of benefits issues related to her retirement. During this conversation, Eileen was told for the first time that Joseph's enrollment in the IBM Plan was in jeopardy. Contrary to the specific confirmation of Joseph's enrollment provided on June 15, 2006, Eileen was told in a follow-up call on January 5, 2007 that Joseph was no longer enrolled in the IBM Plan. Eileen was told that "she would have had to submit an application to continue her son as an eligible disabled dependent within 60 days prior to him turning age 23 in order to keep him as a dependent." Eileen was told that because "this application had not been received" back in June of 2004, Joseph was *permanently barred* from receiving the benefits he would otherwise have been entitled to receive under the IBM Plan.

**ANSWER:**

Defendants deny Joseph was enrolled in the IBM Plan in 2007. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph No. 11 and, therefore, deny the allegations.

**PARAGRAPH NO. 12:**

On January 8, 2007, Eileen spoke to Todd Rogers, an IBM Retirement Benefits Coordinator, and requested copies of the policy language and plan documents necessary to evaluate the decision to expel Joseph from the Plan. Eileen followed up on this request in an email that same day, and also requested that she be provided with copies of all notices or instructions that IBM had ever sent to plan participants concerning the purported requirement to submit a written application prior to a disabled dependent's attaining age 23. On January 9, 2007, Rogers told Eileen that he would check to see if there was any additional information necessary to her appeal of Joseph's expulsion from the IBM Plan.

**ANSWER:**

Defendants admit Plaintiff spoke with Todd Rogers, an IBM Retirement Benefits Coordinator, on January 8, 2007 regarding dependent eligibility for health insurance under the IBM Plan for her son, Joseph. Defendants further admit that Plaintiff sent Mr. Rogers an email dated January 8, 2007 and that Plaintiff requested copies of the IBM summary plan, policy language for the dependent benefit, and any notices or instructions that may have been sent out regarding this benefit. In addition, Defendants admit Mr. Rogers responded to Plaintiff's email on January 9, 2007 and confirmed that he ordered her the Summary Plan Document. Defendants deny the remaining allegations of Paragraph No. 12.

**PARAGRAPH NO. 13:**

On January 16, 2007, Rogers called Eileen and told her that *there was no such additional information*. The next day, in a January 17, 2007 email, Rogers confirmed that he had "done some research with our back office to see if there is any additional documentation that you might have received or need to research your appeal," and that he had confirmed that the only responsive document was a single Summary Plan Description he had ordered. The IBM Plan then mailed a copy of a Summary Plan Description with a "publication date" of December 22, 2006, and with a purported "effective date" of January 1, 2006 ("the 1/1/2006 SPD").

**ANSWER:**

Defendants admit the allegations of Paragraph No. 13.

**PARAGRAPH NO. 14:**

On January 23, 2007, Eileen sent another email to Rogers acknowledging receipt of the 1/1/2006 SPD, and requesting a copy of the actual health insurance policy or contract "to ensure that I am not missing anything." Since the IBM Plan was expelling Joseph from the Plan based on Eileen's failure to submit a written application back in 2004, Eileen requested the 2004 version of the summary plan description. In its January 29, 2007 responsive email, the IBM Plan told Eileen that *no such documents were available*, and that the only document she needed was the 1/1/2006 SPD. Rogers closed his January 29th email by claiming that he could not send any additional information to Eileen to a "non-IBM email address," instructing Eileen to communicate by telephone if she needed more information.

**ANSWER:**

Defendants deny Joseph was "expelled" from the IBM Plan. Defendants admit the

remaining allegations of Paragraph No. 14.

**PARAGRAPH NO. 15:**

On March 27, 2007, Eileen sent an appeal letter (through counsel) to the IBM Plan "requesting that the Plan Administrator reverse an erroneous eligibility determination, and enroll her son, Joseph, in the IBM Plan." Eileen pointed out in the letter that the 60-day application requirement relied upon by the IBM Plan applied only to dependents who were already in the IBM Plan, and wanted to be certain to continue receiving health insurance benefits upon reaching age 23. In bold, italicized letters, Eileen renewed her request for copies of all "Summary Plan Descriptions for 2004, 2005, and 2007."

**ANSWER:**

Defendants admit that Plaintiff appealed the IBM Plan's denial of her claim and

submitted certain documentation to the IBM Plan in support of her appeal. Defendants further

admit Plaintiff requested copies of the Summary Plan Descriptions for 2004, 2005 and 2007.

Defendants deny the remaining allegations of Paragraph No. 15.

**PARAGRAPH NO. 16:**

On April 26, 2007, the IBM Plan sent an unsigned letter to Eileen's counsel rejecting the March 27, 2007 appeal. Quoting from an unidentified version of the SPD, the anonymous letter announced in a conclusory fashion that because Eileen had not submitted a written application at least 60 days prior to Joseph turning age 23, Joseph was forever barred from enrolling in the IBM Plan. The letter misstated the plan language it was relying upon, and failed to address the key contention that the SPD only imposed a 60-day application requirement on currently

enrolled dependents who were already receiving health benefits under the plan, and wanted to continue receiving benefits beyond age 23 without a gap in coverage.  The April 26, 2007 letter ignored the argument that there was no language in the SPD requiring the submission of an application merely to continue a dependent's general, annual eligibility to enroll in the Plan.

**ANSWER:**

Defendants admit only that as claims administrator for the IBM Plan and, under the terms of the IBM Plan, they had sole discretionary authority to determine eligibility for benefits and to construe the terms of the IBM Plan, and that they properly exercised that authority as required by ERISA regarding their determination of Plaintiff's claim and appeal.  Defendants further admit that they responded to Plaintiff's March 27, 2007 letter by letter dated April 26, 2007. Defendants deny the remaining allegations of Paragraph No. 16.

**PARAGRAPH NO. 17:**

Although the IBM Plan had denied on three occasions that there was any operative documents other than the 1/1/2006 SPD, the April 26, 2007 letter included copies of *three additional* SPDs dated August 5, 2003, September 9, 2004, and December 20, 2005, that had not been produced previously.  The anonymous letter described these documents as "IBMs Summary Plan Description[s] for the 2003, 2004 and 2005 plan years."  IBM belatedly produced these documents only after her counsel had intervened on her behalf.  As it later turned out, this belated, April 26, 2007 production still was incomplete.

**ANSWER:**

Defendants admit that they produced IBM's Summary Plan Description[s] for the 2003, 2004 and 2005 plan years with their letter dated April 26, 2007.  Defendants deny the remaining allegations of Paragraph No. 17.

**PARAGRAPH NO. 18:**

On June 12, 2007, Eileen appealed the April 26, 2007 IBM Plan decision (copy of 6/12/2007 appeal letter attached as Exhibit 1, without enclosures).  Because the IBM Plan's April 26, 2007 letter had not even grappled with the actual, plan language at issue, the June 12, 2007 appeal letter reiterated the points raised in Eileen's initial, March 27, 2007 appeal.  The appeal letter also pointed out, with the benefit of the belatedly produced SPD documents, that the SPD had been amended to make clear that the 60-day application requirement had no applicability to Eileen and Joseph's circumstances.

8

**ANSWER:**

Defendants admit that they received the correspondence attached to the Complaint as Exhibit 1 and that said correspondence contained, among other things, the demands described in Paragraph No. 18.  Defendants further admit only that as claims administrator for the IBM Plan under the terms of the IBM Plan, they had sole discretionary authority to determine eligibility for benefits and to construe the terms of the IBM Plan, and that they properly exercised that authority as required by ERISA regarding their determination of Plaintiff's claim and appeal. Defendants deny, however, that said correspondence establishes that Plaintiff, or Plaintiff on Joseph's behalf, is entitled to any relief whatsoever against Defendants and deny the remaining allegations of Paragraph No. 18.

**PARAGRAPH NO. 19:**

Upon review of the SPDs that had been produced for the first time with the April 26, 2007 letter, it also was discovered that the IBM Plan *still had not provided Eileen with all of the plan documents she had requested*.  The June 12, 2007 appeal letter again demanded that the IBM Plan immediately produce all responsive documents.  The June 12, 2007 appeal letter also requested additional information germane to the appeal, setting forth these requests in Tab 4 to the June 12, 2007 letter (copy of Tab 4 enclosed as Exhibit 2 to this complaint).

**ANSWER:**

Defendants admit that they received the correspondence attached to the Complaint as Exhibit 2 and that said document contained, among other things, the demands and additional information requests described in Paragraph 19.  Defendants deny, however, that the additional information requested was germane to the appeal and deny the remaining allegations of Paragraph No. 19.

**PARAGRAPH NO. 20:**

On August 8, 2007, Barnes issued a letter rejecting Eileen's appeal, and confirming that Eileen had exhausted all pre-suit appeals.  Although the IBM Plan had requested an extension of time in order to obtain advice of its own counsel, the August 8, 2007 letter once again failed to

address the specific SPD language relied upon by Eileen in her appeal.  Worse, the August 8, 2007 denial letter quoted and relied upon a policy provision that did not even exist at the time Joseph had turned age 23.  All along, the IBM Plan had contended that Joseph was barred from the Plan because Eileen had not submitted a written application to enroll Joseph in the Plan back in June of 2004.  Barnes claimed in her letter that Eileen had neglected to submit the *"Over Age 23 Disabled Child Application"* in June of 2004.  However, a review of the belatedly produced SPD for 2004 confirms that no such application even existed in 2004.  Thus, Barnes and the IBM Plan had been quoting from *the wrong plan document* and had been relying upon a *nonexistent written application requirement* to justify the decision to exclude Joseph from the IBM Plan. Barnes failed to consider the correct plan document even though Eileen's two, prior appeal letters had emphasized the importance of reviewing the version of the plan in effect in June of 2004.

**ANSWER:**

Defendants admit, by letter dated August 8, 2007, they denied Plaintiff's appeal based on the terms of the IBM Plan and the information provided.  Defendants deny the remaining allegations of Paragraph No. 20.

**PARAGRAPH NO. 21:**

Barnes' letter stated that she was addressing each of the requests for information contained in Tab 4 of the June 12, 2007 appeal letter.  In fact, and contrary to her obligations as an ERISA fiduciary, Barnes ignored certain requests for information, provided non-responsive and incomplete information to some requests, and entirely withheld information responsive to other requests:

  a.  Although IBM has expelled Joseph from the IBM Plan based on a purported requirement to apply to IBM for Joseph's enrollment, Barnes refused to provide the actual printouts documenting Eileen's contacts with IBM, including case notes, electronic or paper chronologies, and internal emails, instead producing only purported summaries of these contacts and events, as well as redacted versions of emails.

  b.  Although IBM's expulsion of Joseph from the Plan is based on Eileen's conduct and purported omissions *in June of 2004,* Barnes refused to provide even *summaries* of Eileen's contacts with IBM *prior to January of 2006*, including case notes, electronic or paper chronologies, internal emails, and other documents directly germane to IBM's decision.

  c.  Although IBM admits that its trained employee benefits personnel confirmed Joseph's right to enrollment in the Plan on June 15, 2006, Barnes refused to provide any information and documentation of the internal discussions and actions leading to Joseph's enrollment, as well as the discussions and actions

leading to IBM's subsequent reversal of its initial decision to enroll Joseph in the Plan.

d.  Although the individuals involved in Joseph's expulsion from the Plan owe a fiduciary duty to Eileen and Joseph, Barnes refused to disclose even the identities and titles of these individuals.

e.  Although IBM admits that its trained benefits personnel initially interpreted the plan language as requiring Joseph's enrollment effective January 1, 2007, and although Barnes was provided with seventh circuit authority making clear that the parties' construction of plan language could be compelling evidence in favor of coverage in such cases, Barnes failed to produce or even comment upon the requested documents reflecting the IBM Plan's past interpretations of these enrollment requirements when addressing the requests of other, similarly situated disabled dependents age 23 and older.

f.  Barnes provided inaccurate information concerning the history of Joseph's enrollment in the IBM Plan, identifying an initial enrollment date of February 8, 1980–before Joseph was even born.

**ANSWER:**

Defendants admit, by letter dated August 8, 2007, they denied Plaintiff's appeal based on the terms of the IBM Plan and the information provided.  The following allegations by Plaintiff state legal conclusions requiring no answer by Defendants:  "contrary to her obligations as an ERISA fiduciary;" "withheld information responsive to other requests;" "IBM has expelled Joseph from the IBM Plan;" "IBM's expulsion of Joseph from the Plan is based on Eileen's conduct and purported omissions *in June of 2004*;" and "the individuals involved in Joseph's expulsion from the Plan owe a fiduciary duty to Eileen and Joseph."  To the extent these allegations purport to allege facts, Defendants deny same.  Defendants deny the remaining allegations of Paragraph No. 21.

**PARAGRAPH NO. 22:**

Barnes' August 8, 2007 letter confirmed that the IBM Plan had once again withheld additional responsive documents in its prior responses.  Despite the repeated requests for such documents by Eileen and her counsel, the IBM Plan belatedly produced even more summary plan descriptions for the first time in its August 8, 2007 letter.

**ANSWER:**

Defendants admit that the IBM Plan produced additional Summary Plan Descriptions to Plaintiff with its letter dated August 8, 2007.  Defendants further admit that Plaintiff and her counsel repeatedly requested documents.  Defendants deny the remaining allegations of Paragraph No. 22.

**Plaintiff's Allegations Regarding**
**"First Claim for Relief – Claim for Enrollment and Benefits"**

**PARAGRAPH NO. 23:**

All prior paragraphs are incorporated by reference.

**ANSWER:**

Defendants incorporate by reference their answers to Paragraph Nos. 1 through 22 as their answer to Paragraph No. 23.

**PARAGRAPH NO. 24:**

Eileen has at all times material been a qualified participant and beneficiary under the multiple iterations of the IBM Plan, and at all times material, her dependent son, Joseph, has been eligible to enroll in the IBM Plan as a dependent participant and beneficiary.

**ANSWER:**

Defendants admit only that Plaintiff was employed by IBM and that, due to such employment, Plaintiff was eligible for coverage under the IBM Plan.  Defendants deny that Joseph was eligible to enroll in the IBM Plan as a dependent participant and beneficiary and deny the remaining allegations of Paragraph No. 24.

**PARAGRAPH NO. 25:**

Pursuant to the applicable IBM Plan documents, Eileen satisfied all conditions precedent to maintain her own eligibility under the IBM Plan, and to maintain the eligibility of her dependent son, Joseph.

**ANSWER:**

Defendants admit that Plaintiff was eligible for coverage under the IBM Plan.

Defendants deny Joseph was eligible for coverage under the IBM Plan and deny the remaining

allegations of Paragraph No. 25.

**PARAGRAPH NO. 26:**

On June 16, 2006, the IBM Plan informed Eileen that consistent with Eileen's rights
under the IBM Plan, Joseph had been enrolled as a disabled dependent in the IBM Plan effective
January 1, 2007. The IBM Plan Customer Service Specialist enrolled Joseph in the Plan only
after consulting internally to ensure that this decision was correct. The specialist advised Eileen
that Joseph had met the eligibility requirements for the IBM Plan and therefore had been enrolled
in the Plan effective January 1, 2007, and nothing further was required of Eileen to permit Eileen
and Joseph to enjoy the benefits of the IBM Plan.

**ANSWER:**

Defendants deny the allegations of Paragraph No. 26.

**PARAGRAPH NO. 27:**

On January 5, 2007, the IBM Plan erroneously reversed its decision, and told Eileen that
Joseph had been removed from the IBM Plan. Eileen was told that at least 60 days prior to
Joseph's 23rd birthday of August 8, 2004, she had been required to submit an application to
enroll Joseph in the Plan. Thus, according to IBM, Eileen had been required to submit this
application no later than June 9, 2004.

**ANSWER:**

Defendants deny the allegations of Paragraph No. 27.

**PARAGRAPH NO. 28:**

The IBM Plan's decision is clearly erroneous, and the January 5, 2007 removal of Joseph
from the IBM Plan violates the contractual and statutory rights of Eileen and Joseph.

**ANSWER:**

Defendants deny the allegations of Paragraph No. 28.

**PARAGRAPH NO. 29:**

First, the 60-day application requirement relied upon by IBM does not even apply to defendants who are not already enrolled in the Plan.  The application requirement is for the continuation of benefit payments to current participants, not the preservation of annual enrollment eligibility.  The 60-day application requirement gives the IBM Plan time to evaluate whether a dependent *currently relying upon the Plan for benefits* meets the new eligibility requirements applicable upon that dependent's attaining age 23.  Conversely, there is nothing in the plan documents requiring the submission of an application to preserve a dependent's eligibility to apply for enrollment each year during the Plan's annual, open enrollment period.  To the contrary, the Plan explicitly provides in multiple sections of the plan documents:  "*Each year,* during an enrollment period usually held in the fall, *you will have the opportunity to elect coverage for* yourself and any other *eligible family members you wish to enroll for the upcoming plan year* (normally January 1 through December 31)."

**ANSWER:**

Defendants deny the allegations of Paragraph No. 29.

**PARAGRAPH NO. 30:**

Second, the 60-day application requirement relied upon by IBM to expel Joseph from the IBM Plan *did not even exist at the time Eileen supposedly was required to submit this application.*  The version of the plan that was in effect on June 9, 2004, 60 days prior to Joseph's 23rd birthday, contains no requirement whatsoever for the submission of an application (§ 3.1.1.4 of the August 5, 2003 version of the SPD).  Thus Barnes did not even read the correct version of the plan documents when reaching her erroneous decision.  In fact, not only is there no such requirement in the version of the plan documents in effect on June 9, 2004, but there is no such requirement in any of the three versions of the plan documents published by IBM (§ 3.1.1.4 of the 6/17/2004, 7/22/2004, and 8/12/2004 versions of the SPD).  It appears from the summary plan description belatedly produced by IBM that an application requirement was first introduced in the SPD published on June 30, 2005–long after Joseph had already turned 23.

**ANSWER:**

Defendants deny the allegations of Paragraph No. 30.

**PARAGRAPH NO. 31:**

ERISA imposes an obligation to draft plan language calculated to be understood by the average plan participant, sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.  *See* 29 U.S.C. § 1022(a).  Further, the summary plan description must clearly set forth the plan's requirements for eligibility, as well as the circumstances that may result in disqualification, ineligibility or denial or loss of benefits.  29 U.S.C. § 1022(b).  Contrary to these obligations, IBM seeks to advance an "interpretation" of the plan that would impose a one-shot deadline to preserve a disabled

14

dependent's eligibility, without any disclosure in the plan documents of such a requirement and attendant consequences.

**ANSWER:**

The allegations of Paragraph No. 31 state legal conclusions requiring no answer by

Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 32:**

According to IBM's interpretation, a failure to submit an application 60 days prior to the dependent's turning age 23 triggers the dependent's permanent, lifetime exclusion from the Plan. Section 3.1.1.4 of the SPD does not "reasonably apprise" participants of a potential, permanent loss of coverage in "language calculated to be understood by the average plan participant." Indeed, the IBM Plan's own professional employee benefits specialists did not understand the plan language to impose such a requirement. IBM's interpretation of § 3.1.1.4 erroneously equates continuation of the receipt of *benefits* to someone already enrolled in the plan with preservation of *annual eligibility to enroll* in a plan. These are two separate and distinct concepts, and the 60-day application requirement applies only to the former, not to the latter.

**ANSWER:**

The allegations of Paragraph No. 32 state legal conclusions requiring no answer by

Defendants. To the extent it purports to allege facts, Defendants deny same. Answering further,

Defendants admit that, pursuant to the Plan, a failure to submit an application 60 days prior to

the defendant's turning age 23 triggers the dependent's exclusion from the Plan.

**PARAGRAPH NO. 33:**

Alternatively, the IBM Plan has waived the right to enforce this purported, 60-day application requirement. Even if IBM could reasonably argue that § 3.1.1.4 creates a one-shot opportunity to preserve Joseph's eligibility, the IBM Plan's enrollment of Joseph into the Plan on June 16, 2006 waived any rights it would otherwise have had to enforce this provision. While coverage cannot be created by waiver or estoppel, a plan administrator can waive administrative requirements or conditions, such as the submission of an application by a particular date.

**ANSWER:**

The allegations of Paragraph No. 33 state legal conclusions requiring no answer by

Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 34:**

Further, the IBM Plan is equitably estopped from attempting to enforce this purported administrative requirement. Since January 5, 2007, the IBM Plan has pointed to Eileen's purported failure to submit a written application in June of 2004 as its basis for excluding Joseph from the Plan. It turns out, however, that Barnes and her colleagues have not even been reading the right version of the contract. The 2004 version of § 3.1.1.4 only requires a phone call, not the submission of an application. Because it was not reading the right contract, the IBM Plan presumably has not even investigated what phone calls were made by Eileen prior to June 9, 2004, and certainly has not asserted the lack of such a call as the basis for Joseph's exclusion from the Plan. Further, the IBM Plan has refused to produce *any* documentation or *any* contracts between Eileen and the IBM Plan prior to January of 2006, let alone telephone contacts occurring in 2004 or earlier.

**ANSWER:**

The allegations of Paragraph No. 34 state legal conclusions requiring no answer by

Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 35:**

Having repeatedly relied on the wrong version of the SPD; having repeatedly pointed to a "written application" requirement that did not even exist in 2004; and having refused to produce any documentation of contacts between Eileen and the IBM Plan prior to January of 2006, the IBM Plan is estopped from premising its expulsion of Joseph from the Plan based on what telephone calls were or were not made on or before June 9, 2004. The IBM Plan had a fiduciary obligation to review and rely on the correct plan documents, to articulate a specific explanation for its claim decision, to accurately describe the terms and conditions of the Plan, and to timely produce requested documents and information germane to Eileen and Joseph's enrollment and benefits claim. Barnes and the IBM Plan have failed to discharge even one of these basic obligations, and are equitably estopped from asserting new theories at this juncture.

**ANSWER:**

The allegations of Paragraph No. 35 state legal conclusions requiring no answer by

Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 36:**

Joseph and Eileen have been harmed by Joseph's exclusion from the IBM Plan. Eileen has been forced to obtain health benefits for Joseph outside of the IBM Plan, depriving her of the benefits of the reimbursement for health care costs otherwise payable to her under the IBM Plan. Pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3)(A), Eileen and Joseph are entitled to an

order requiring the reinstatement of Joseph in the IBM Plan, and a permanent injunction prohibiting the IBM Plan from expelling Joseph from the IBM Plan in the future.

**ANSWER:**

The allegations of Paragraph No. 36 state legal conclusions requiring no answer by Defendants. To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 37**

Pursuant to 29 U.S.C. § 1132(a)(3)(A), Eileen further requests that this Court order the IBM Plan (a) to amend the plan documents to provide all plan participants and beneficiaries a plain-English explanation of the eligibility requirements in language meeting the requirements of 29 U.S.C. § 1022; and (b) to enroll similarly situated dependents who have been barred from the IBM Plan retroactive to the dates of such requests. Until and unless the plan is amended, moreover, the IBM Plan should be permanently enjoined from barring similarly situated dependents from the IBM Plan.

**ANSWER:**

Defendants admit Plaintiff requests the relief identified in Paragraph No. 37, but denies Plaintiff is entitled to any of the requested relief.

**Plaintiff's Allegations Regarding
"Second Claim for Relief – Statutory Penalties for Failure to Disclose"**

Defendants make no answer to Plaintiff's Second Claim for Relief because, by separate motion, they have moved to dismiss this Claim.

**Plaintiff's Allegations Regarding
"Third Claim for Relief – Breach of Fiduciary Duty Against Barnes"**

Defendants make no answer to Plaintiff's Third Claim for Relief because, by separate motion, they have moved to dismiss this Claim.

**Plaintiff's Allegations Regarding
"Fourth Claim for Relief – Attorneys' Fee Award"**

**PARAGRAPH NO. 45:**

All prior paragraphs are incorporated by reference.

**ANSWER:**

Defendants incorporate by reference their responses to Paragraph Nos. 1 through 44 as their answer to Paragraph No. 45.

**PARAGRAPH NO. 46:**

There is no reasonable or substantial justification for the "interpretation" put forward by Barnes and the IBM Plan to exclude Joseph from the IBM Plan.  Pursuant to 29 U.S.C. § 1132(g)(1), Eileen and Joseph are entitled to recover an award of reasonable attorneys' fees and costs in this action from January 8, 2007 to the date of the entry of judgment.

**ANSWER:**

The allegations of Paragraph No. 46 state legal conclusions requiring no answer by Defendants.  To the extent the allegations purport to allege facts, Defendants deny same.

**PARAGRAPH NO. 47:**

If the defendants had fairly and honestly considered the plan language and points advanced by Eileen, and had gathered, reviewed and produced the documents and information requested by Eileen, there would have been no need for Eileen to file a lawsuit.  Judgment should be entered in favor of Eileen and against Barnes and the IBM Plan, awarding reasonable attorneys' fees and costs in an amount to be determined by this Court.

**ANSWER:**

The allegations of Paragraph No. 47 state legal conclusions requiring no answer by Defendants.  To the extent the allegations purport to allege facts, Defendants deny same.

\*                    \*                    \*

**DEFENDANTS' AFFIRMATIVE DEFENSES**

By way of affirmative defenses, Defendants aver as follows:

**FIRST AFFIRMATIVE DEFENSE**

The denial of benefits complained of in Plaintiff's First Claim for Relief was reasonable and was not arbitrary and capricious or an abuse of discretion under ERISA.

18

## SECOND AFFIRMATIVE DEFENSE

To the extent the First Claim for Relief seeks a determination of entitlement to future benefits, such relief may not be granted as the IBM Plan expressly provides that entitlement to future benefits is subject to the requirement of proof of continued eligibility pursuant to the terms of the IBM Plan.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Fourth Claim for Relief fails to state a claim upon which relief may be granted.

\*                  \*                  \*

**WHEREFORE,** the Complaint should be dismissed with prejudice and, based on the appropriateness of Defendants' determinations and the lack of any improper conduct by Defendants, Defendants request that the Court award Defendants their attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).


DATE:  March 7, 2008                    IBM MEDICAL AND DENTAL PLAN and
                                        R.A. BARNES, in her capacity as Plan
                                        Administrator


                                         /s/ Peter R. Bulmer_____
                                        Attorneys for Defendants

Peter R. Bulmer (bulmerp@jacksonlewis.com)
Sara A. Weinberg (weinbers@jacksonlewis.com)
Jackson Lewis LLP
320 West Ohio, Suite 500
Chicago, Illinois
Tel: 312.787.4949/ Fax: 312.787.4995

## CERTIFICATE OF SERVICE

I, Peter R. Bulmer, an attorney, certify that on the 7th day of March, 2008, I caused a true and correct copy of the foregoing Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint to be electronically filed pursuant to the Court's ECF/CM protocols. Notice of these filings will be sent to all parties registered to receive electronic notification, including counsel for plaintiff:

Paul F. Heaton
Gass, Webber, Mullins LLC
309 North Water Street
7th Floor
Milwaukee, WI 53202-5718

William G. Beatty
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603


_____/s/ Peter R. Bulmer_____