UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

EILEEN M. HUSS, individually and as
Guardian for JOSEPH R. HUSS, JR.
1619 Leabrook Lane
Wheaton IL 60187,

                Plaintiff,

      vs.

IBM MEDICAL AND DENTAL
PLAN and R.A. BARNES, in her capacity as
PLAN ADMINISTRATOR,
5411 Page Road
Dunham, NC 27703,

                Defendants.

Civil Action No. 07 C 7028

Judge James B. Zagel
Mag. Judge Jeffrey Cole

---

## AMENDED COMPLAINT

The Plaintiff, Eileen M. Huss, individually and as guardian for Joseph R. Huss, Jr., asserts the following claims for relief:

### Parties

1.      Plaintiff Eileen M. Huss ("Eileen") is a citizen of the State of Illinois, residing at 1619 Leabrook Lane, Wheaton, Illinois, 60187, and at all times material has been the legal guardian for her disabled son, Joseph R. Huss, Jr. ("Joseph").

2.      Defendant IBM Medical and Dental Plan ("the IBM Plan") is the legal entity through which the IBM Corporation ("IBM") provides employee benefits to its active and retired employees. The benefits program offered by IBM is governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), including the health insurance benefits that are the subject of this action. The IBM Plan address is 5411 Page Road, Durham, NC 27703. The IBM Plan regularly does business within the State of Illinois in the course of providing and administering employee benefits for current and former employees of IBM.

3.      Defendant R.A. Barnes ("Barnes") is the plan administrator for the IBM Plan, operating out of the Office of the Plan Administrator, IBM Employee Services Center, 5411 Page Road, Durham, NC 27703.  Barnes administers employee benefits provided under the IBM Plan to current and former employees of IBM residing within the State of Illinois. Barnes has at all times material to this complaint acted as the duly authorized representative of the Plan, acting within the course and scope of her responsibilities as the plan administrator.

## Jurisdiction and Venue

4.      Jurisdiction is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), as this action asserts a claim for benefits and for equitable relief pursuant to 29 U.S.C. §§ 1024(b)(4), 1132(a)(1)(B), 1132(a)(3)(A) and (B), 1132(c), 1133, 1132(g)(1), and 29 C.F.R. § 2560.503-1(g).

5.      Venue is proper in the Northern District of Illinois based upon 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), as the breach of the IBM Plan obligations giving rise to this action took place within the Northern District of Illinois; defendants' conduct was directed at the plaintiff while plaintiff was residing and physically located within the Northern District of Illinois; and both IBM and the IBM Plan regularly conduct business within the Northern District of Illinois.

## Background Allegations

6.      On December 31, 2006, Eileen retired as an IBM employee after more than 30 years of service.  During her employment and upon her retirement, Eileen was at all times material both a participant and a beneficiary under multiple iterations of the IBM Plan.

7.      Eileen's son Joseph was born on August 8, 1981, while Eileen was an active, full-time employee of IBM.  Since his birth, Joseph has suffered from a severe mental disability that renders him incapable of speech, and has at all times been completely dependent upon his parents for his support and well-being.  Eileen has been a participant in

the IBM Plan throughout Joseph's entire, 26-year lifetime. Joseph has been a dependent of Eileen and has been continuously eligible to enroll in the IBM Plan since his birth.

8.     Although he has been continuously eligible to enroll in the IBM Plan during the Plan's open enrollment period each year, Joseph has not always been enrolled in the IBM Plan. Upon information and belief, Joseph was enrolled in the IBM Plan from the date of his birth through December 31, 1997. Since Joseph's initial enrollment in the IBM Plan and thereafter, the IBM Plan knew or should have known of Joseph's severe mental disability. Commencing on January 1, 1998, Joseph was enrolled in an employee benefit plan offered through his father's employer.

### The IBM Plan Enrolls Joseph in the Plan
### Effective January 1, 2007

9.     In late 2005 or early 2006, Eileen contacted a Customer Service Specialist in the Employee Services Center of the IBM Plan to enroll Joseph in the IBM Plan. Under the IBM Plan, disabled adult dependents of IBM employees and retirees can continue to receive benefits under the IBM Plan so long as they meet the special eligibility requirements applicable to disabled dependents age 23 and older. Joseph met those requirements at the time of this call, and continues to meet each of those eligibility requirements. Eileen was told to call again six months prior to her retirement to ensure that Joseph was enrolled in the IBM Plan.

10.     Pursuant to the instructions she had received, on June 15, 2006, Eileen again contacted a Customer Service Specialist in the Employee Services Center of the IBM Plan to enroll Joseph in the IBM Plan. After Eileen provided him with the necessary information concerning Joseph, the Customer Service Specialist placed Eileen on hold while he confirmed whether any additional steps were required to enroll Joseph as a participant in the IBM Plan. The Customer Service Specialist then told Eileen that no additional steps were required, and that he had enrolled Joseph in the IBM Plan with an effective date of January 1, 2007, the beginning of the next plan year.

11.     Throughout her thirty years of employment with IBM, Eileen had occasion to communicate with representatives of the IBM Plan periodically, and accordingly, received information from the IBM Plan periodically in written form, in electronic form, and through oral conversations.  At no time during her entire tenure as an IBM employee did any representative of the IBM Plan ever make any written, electronic, or oral statements concerning Joseph's eligibility under the IBM Plan that were in any way inconsistent with the statements made by the IBM Plan's Customer Service Specialist on June 15, 2006.  Eileen has requested copies of IBM Plan documents reflecting the IBM Plan's record of all such communications.  Review of such documents might assist Eileen in recalling whether statements similar to the statements made on June 15, 2006 concerning Joseph's continued eligibility under the IBM Plan ever were made to her by representatives of the IBM Plan *prior to* June 15, 2006.

### IBM Reverses its Decision— Joseph is Expelled from the Plan Based on a Failure to Submit a Written Application Back in June of 2004

12.     On January 3, 2007, a few days after her retirement as an IBM employee, Eileen called the Customer Service Specialist to address a number of benefits issues related to her retirement.  During this conversation, Eileen was told for the first time that Joseph's enrollment in the IBM Plan was in jeopardy.  Contrary to the specific confirmation of Joseph's enrollment that had been provided to her on June 15, 2006, Eileen was told in a follow-up call on January 5, 2007 that Joseph was no longer enrolled in the IBM Plan. Eileen was told that "she would have had to submit an application to continue her son as an eligible disabled dependent within 60 days prior to him turning age 23 in order to keep him as a dependent."  Eileen was told that because "this application had not been received" back in June of 2004, Joseph was *permanently barred* from receiving the benefits he would otherwise have been entitled to receive under the IBM Plan.  At no time prior to this January 3, 2007 conversation was Eileen advised that it was necessary for her to submit an application—

4

written or oral—within 60 days prior to Joseph's turning age 23 in order to maintain Joseph's eligibility under the IBM Plan.

**Eileen Requests Applicable Plan Language and
Other Documents Germane to IBM's Reversal**

13.     On January 8, 2007, Eileen spoke to Todd Rogers, an IBM Retirement Benefits Coordinator, and requested copies of the policy language and plan documents necessary to evaluate the decision to expel Joseph from the Plan.  Eileen followed up on this request in an email that same day, and also requested that she be provided with copies of all notices or instructions that IBM had ever sent to plan participants concerning the purported requirement to submit a written application prior to a disabled dependent's attaining age 23. On January 9, 2007, Rogers told Eileen that he would check to see if there was any additional information necessary to her appeal of Joseph's expulsion from the IBM Plan.

**IBM Denies any Other Documents Exist**

14.     On January 16, 2007, Rogers called Eileen and told her that *there was no such additional information*.  The next day, in a January 17, 2007 email, Rogers confirmed that he had "done some research with our back office to see if there is any additional documentation that you might have received or need to research your appeal," and that he had confirmed that the only responsive document was a single Summary Plan Description he had ordered. The IBM Plan then mailed a copy of a Summary Plan Description with a "publication date" of December 22, 2006, and with a purported "effective date" of January 1, 2006 ("the 1/1/2006 SPD").

**Eileen Renews Request for Documents—
IBM Again Denies any Such Documents are Available**

15.     On January 23, 2007, Eileen sent another email to Rogers acknowledging receipt of the 1/1/2006 SPD, and requesting a copy of the actual health insurance policy or contract "to ensure that I am not missing anything."  Since the IBM Plan was expelling Joseph from the Plan based on Eileen's failure to submit a written application back in 2004,

5

Eileen requested the 2004 version of the summary plan description.  In its January 29, 2007 responsive email, the IBM Plan told Eileen that *no such documents were available*, and that the only document she needed was the 1/1/2006 SPD.  Rogers closed his January 29th email by claiming that he could not send any additional information to Eileen to a "non-IBM email address," instructing Eileen to communicate by telephone if she needed more information.

### Eileen Submits March 27, 2007 Initial Appeal

16.     On March 27, 2007, Eileen sent an appeal letter (through counsel) to the IBM Plan "requesting that the Plan Administrator reverse an erroneous eligibility determination, and enroll her son, Joseph, in the IBM Plan."  Eileen pointed out in the letter that the 60-day application requirement relied upon by the IBM Plan applied only to dependents who were already enrolled in the IBM Plan, and wanted to be certain to continue receiving health insurance benefits upon reaching age 23.  In bold, italicized letters, Eileen renewed her request for copies of all "Summary Plan Descriptions for 2004, 2005, and 2007."

### IBM Plan Rejects Initial Appeal—
### Misstates Plan Language and Ignores Basis for Appeal

17.     On April 26, 2007, the IBM Plan sent an unsigned letter to Eileen's counsel rejecting her March 27, 2007 appeal.  Quoting from an unidentified version of the SPD, the anonymous letter announced in a conclusory fashion that because Eileen had not submitted a written application at least 60 days prior to Joseph's turning age 23, Joseph was forever barred from enrolling in the IBM Plan.  The letter misstated the plan language it was relying upon, and failed to address the key contention that the SPD only imposed a 60-day application requirement on currently enrolled dependents who were already receiving health benefits under the plan, and wanted to continue receiving benefits beyond age 23 without a gap in coverage.  The April 26, 2007 letter ignored the argument that there was no language in the SPD requiring the submission of an application merely to continue a dependent's general, annual eligibility to enroll in the Plan.

18.     Although the IBM Plan had denied on three occasions that there were any responsive documents other than the 1/1/06 SPD, the April 26, 2007 letter included copies of *three additional* SPDs dated August 5, 2003, September 9, 2004, and December 20, 2005, that had not been produced previously.  The anonymous letter described these documents as "IBM's Summary Plan Description[s] for the 2003, 2004 and 2005 plan years."  IBM belatedly produced these documents only after Eileen's counsel had intervened on her behalf.  As it later turned out, this belated, April 26, 2007 production still was incomplete.

**Eileen Submits June 12, 2007 Final Appeal**

19.     On June 12, 2007, Eileen appealed the April 26, 2007 IBM Plan decision (copy of 6/12/2007 appeal letter attached as Exhibit 1, without enclosures).  Because the IBM Plan's April 26, 2007 letter had not even grappled with the actual, plan language at issue, the June 12, 2007 appeal letter reiterated the points raised in Eileen's initial, March 27, 2007 appeal.  The appeal letter also pointed out, with the benefit of the belatedly produced SPD documents, that the SPD had been amended to make clear that the 60-day application requirement had no applicability to Eileen and Joseph's circumstances.

20.     Upon review of the SPDs that had been produced for the first time with the April 26, 2007 letter, it also was discovered that the IBM Plan *still had not provided Eileen with all of the plan documents she had requested*.  The June 12, 2007 appeal letter again demanded that the IBM Plan immediately produce all responsive documents.  The June 12, 2007 appeal letter also requested additional information germane to the appeal, setting forth these requests in Tab 4 to the June 12, 2007 letter (copy of Tab 4 enclosed as Exhibit 2 to this complaint).

**IBM Rejects Eileen's Final Appeal—
Relies on the Wrong Plan Document and
A Nonexistent Application Requirement**

21.     On August 8, 2007, Barnes issued a letter rejecting Eileen's appeal, and confirming that Eileen had exhausted all pre-suit appeals.  Although the IBM Plan had requested an extension of time in order to obtain advice of its own counsel, the August 8,

2007 letter once again failed to address the specific SPD language relied upon by Eileen in her appeal. Worse, the August 8, 2007 denial letter quoted and relied upon a policy provision that did not even exist at the time Joseph had turned age 23. All along, the IBM Plan had contended that Joseph was barred from the Plan because Eileen had not submitted a written application to enroll Joseph in the Plan back in June of 2004. Barnes claimed in her letter that Eileen had neglected to submit the "*Over Age 23 Disabled Child Application*" in June of 2004. However, a review of the belatedly produced SPD for 2004 confirms that no such application even existed in 2004. Thus, Barnes and the IBM Plan had been quoting from *the wrong plan document* and had been relying upon a *nonexistent written application requirement* to justify the decision to exclude Joseph from the IBM Plan. Barnes failed to consider the correct plan document even though Eileen's two prior appeal letters had emphasized the importance of reviewing the version of the plan in effect in June of 2004.

22. ERISA imposes an obligation to draft plan language calculated to be understood by the average plan participant, sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. *See* 29 U.S.C. § 1022(a). Further, the summary plan description must clearly set forth the plan's requirements for eligibility, as well as the circumstances that may result in disqualification, ineligibility or denial or loss of benefits. 29 U.S.C. § 1022(b). Contrary to these obligations, IBM seeks to advance an "interpretation" of the plan that would impose a one-shot deadline to preserve a disabled dependent's eligibility, without any disclosure in the plan documents of such a requirement and attendant consequences.

23. Section 3.1.1.4 of the SPD does not "reasonably apprise" participants of a potential, permanent loss of coverage in "language calculated to be understood by the average plan participant." Indeed, the IBM Plan's own professional employee benefits specialists did not understand the plan language to impose such a requirement.

24. Further, the IBM Plan has waived the right to enforce this purported, 60-day application requirement. Even if IBM could reasonably argue that § 3.1.1.4 creates a one-

shot opportunity to preserve Joseph's eligibility, the IBM Plan's enrollment of Joseph into the Plan on June 16, 2006 waived any rights it would otherwise have had to enforce this provision. Upon information and belief, the IBM Plan provides uniform and consistent education and training to its employees concerning the meaning and application of the terms of the IBM Plan, in order to discharge its obligation to resolve eligibility and benefit questions consistently for similarly situated participants, claimants, and beneficiaries.

25.     Based upon such uniform education and training, over the years the IBM Plan would have dispensed instructions, advice, and information concerning the eligibility for benefits for disabled dependents age 23 and older to similarly situated individuals substantially identical to the instructions, advice, and information provided to Eileen on June 16, 2006. Depending upon the contents of the records to be obtained in this lawsuit, moreover, it may yet be determined that similar instructions, advice, and information was provided to Eileen prior to Joseph's attaining the age of 23. Eileen and other plan participants would have reasonably relied upon such instructions, advice, and information over the years, particularly in light of the fact that the express provisions of the IBM Plan do not convey any requirement to submit an oral or written application for continued eligibility under the IBM Plan.

### IBM Fails to Furnish and Disclose Requested Information

26.     Barnes' letter stated that she was addressing each of the requests for information contained in Tab 4 of the June 12, 2007 appeal letter. In fact, and contrary to her obligations as an ERISA fiduciary, Barnes ignored certain requests for information, provided non-responsive and incomplete information to some requests, and entirely withheld information responsive to other requests:

    a.   Although IBM has expelled Joseph from the IBM Plan based on a purported requirement to apply to IBM for Joseph's enrollment, Barnes refused to provide the actual printouts documenting Eileen's contacts with IBM, including case notes, electronic or paper chronologies, and internal emails, instead producing only purported summaries of these contacts and events, as well as redacted versions of emails.

b.  Although IBM's expulsion of Joseph from the Plan is based on Eileen's conduct and purported omissions *in June of 2004*, Barnes refused to provide even *summaries* of Eileen's contacts with IBM *prior to January of 2006*, including case notes, electronic or paper chronologies, internal emails, and other documents directly germane to IBM's decision.

c.  Although IBM admits that its trained employee benefits personnel confirmed Joseph's right to enrollment in the Plan on June 15, 2006, Barnes refused to provide any information and documentation of the internal discussions and actions leading to Joseph's enrollment, as well as the discussions and actions leading to IBM's subsequent reversal of its initial decision to enroll Joseph in the Plan.

d.  Although the individuals involved in Joseph's expulsion from the Plan owe a fiduciary duty to Eileen and Joseph, and although the identities and titles of such individuals is pertinent to the evaluation of whether the IBM Plan's claim and review procedures satisfies the minimum requirements imposed by ERISA, Barnes refused to disclose this information.

e.  Although IBM admits that its trained benefits personnel initially interpreted the plan language as requiring Joseph's enrollment effective January 1, 2007, and although Barnes was provided with seventh circuit authority making clear that the parties' construction of plan language could be compelling evidence in favor of coverage in such cases, Barnes failed to produce or even comment upon the requested documents reflecting the IBM Plan's past interpretations of these enrollment requirements when determining the eligibility of other, similarly situated disabled dependents age 23 and older.

f.  Barnes provided inaccurate information concerning the history of Joseph's enrollment in the IBM Plan, identifying an initial enrollment date of February 8, 1980—before Joseph was even born.

27.  Barnes' August 8, 2007 letter confirmed that the IBM Plan had once again withheld additional responsive documents in its prior responses.  Despite the repeated requests for such documents by Eileen and her counsel, the IBM Plan belatedly produced even more summary plan descriptions for the first time in its August 8, 2007 letter.

## First Claim for Relief—
## Enforcement of Rights Under the IBM Plan

28.  All prior paragraphs are incorporated by reference.

29.  Eileen has at all times material been a qualified participant and beneficiary under the multiple iterations of the IBM Plan, and at all times material, her dependent son,

Joseph, has been eligible to enroll in the IBM Plan as a dependent participant and beneficiary.

30.    Pursuant to the applicable IBM Plan documents, Eileen satisfied all conditions precedent to maintain her own eligibility under the IBM Plan, and to maintain the eligibility of her dependent son, Joseph.

31.    On June 16, 2006, the IBM Plan informed Eileen that consistent with Eileen's rights under the IBM Plan, Joseph had been enrolled as a disabled dependent in the IBM Plan effective January 1, 2007.  The IBM Plan Customer Service Specialist enrolled Joseph in the Plan only after consulting internally to ensure that this decision was correct. This specialist advised Eileen that Joseph had met the eligibility requirements for the IBM Plan and therefore had been enrolled in the Plan effective January 1, 2007, and that nothing further was required of Eileen to permit Eileen and Joseph to enjoy the benefits of the IBM Plan.

32.    On January 5, 2007, the IBM Plan erroneously reversed its decision, and told Eileen that Joseph had been removed from the IBM Plan.  Eileen was told that at least 60 days prior to Joseph's 23rd birthday of August 8, 2004, she had been required to submit an application to enroll Joseph in the Plan.  Thus, according to IBM, Eileen had been required to submit this application no later than June 9, 2004.

33.    The IBM Plan's decision is clearly erroneous, arbitrary, and capricious, and the January 5, 2007 removal of Joseph from the IBM Plan is inconsistent with Eileen and Joseph's rights under the terms of the IBM Plan.

34.    First, the 60-day application requirement relied upon by IBM does not even apply to dependents who are not already enrolled in the Plan.  The application requirement is for the continuation of benefit payments to current participants, not the preservation of annual enrollment eligibility.  The 60-day application requirement gives the IBM Plan time to evaluate whether a dependent *currently relying upon the Plan for benefits* meets the new eligibility requirements applicable upon that dependent's attaining age 23.  Conversely, there is nothing

in the plan documents requiring the submission of an application to preserve a dependent's eligibility to apply for enrollment each year during the Plan's annual, open enrollment period. To the contrary, the Plan explicitly provides in multiple sections of the plan documents: "*Each year*, during an enrollment period usually held in the fall, *you will have the opportunity to elect coverage for* yourself and any other *eligible family members you wish to enroll for the upcoming plan year* (normally January 1 through December 31)."

35.    Second, the 60-day application requirement relied upon by IBM to expel Joseph from the IBM Plan *did not even exist at the time Eileen supposedly was required to submit this application.* The version of the plan that was in effect on June 9, 2004, 60 days prior to Joseph's 23rd birthday, contains no requirement whatsoever for the submission of a written application (§ 3.1.1.4 of the August 5, 2003 version of the SPD). Thus, Barnes did not even read the correct version of the plan documents when reaching her erroneous decision. In fact, not only is there no such requirement in the version of the plan documents in effect on June 9, 2004, but there is no such requirement in any of the next three versions of the plan documents published by IBM (§ 3.1.1.4 of the 6/17/2004, 7/22/2004, and 8/12/2004 versions of the SPD). It appears from the summary plan descriptions belatedly produced by IBM that an application requirement was first introduced in the SPD published on June 30, 2005—long after Joseph had already turned 23.

36.    According to IBM's interpretation, a failure to submit an application 60 days prior to the dependent's turning age 23 triggers the dependent's permanent, lifetime exclusion from the Plan. IBM's interpretation of § 3.1.1.4 erroneously equates continuation of the receipt of *benefits* to someone already enrolled in the plan with preservation of *annual eligibility to enroll* in a plan. These are two separate and distinct concepts, and the 60-day application requirement applies only to the former, not to the latter.

## Arbitrary and Capricious Review Process

37.     During the course of evaluating and reviewing Eileen and Joseph's claim, Barnes and the IBM Plan failed to employ the fair and rational claim review process required by law.  *See* 29 CFR §§ 2560.503-1(b)(1) and (5), and 2560.503-1(h)(1), (2), and (3).  Among other things, Barnes and the IBM Plan failed to furnish requested information to Eileen and Joseph required by law, and to provide "copies of all documents, records, and other information relevant to the claimant's claim for benefits" (29 CFR §§ 2560.503-1(h)(ii)(3), 2560.503-1(i)(5), and 2560.503-1(j)(3); failed to "ensure and verify" that its personnel reached "determinations [] in accordance with *governing* plan documents" (29 CFR § 2560.503-1(b)(5)); failed to "take[] into account all comments … and other information submitted by the claimant relating to the claim" (29 CFR § 2560.503-1(h)(2)(iv)); upon information and belief, failed to administer and review Eileen and Joseph's claim in a manner that "applied [the controlling terms] consistently with respect to similarly situated claimants" (29 CFR § 2560.503-1(b)(5)); and failed to provide written decisions that included a "reference to the specific plan provisions on which the determination is based" (29 CFR §§ 2560.503-1(g)(1)(ii), 2560.503-1(j)(2)).  These failures also violated the obligations imposed upon Barnes and the IBM Plan by 29 U.S.C. § 1104(a)(1)(B) and (D).

38.     Based on these multiple departures from the basic, minimum requirements for conducting a full and fair evaluation and review of claims, the IBM Plan's evaluation and review process was arbitrary and capricious as a matter of law, and should be reversed. Eileen and Joseph are entitled to be placed in the same position they enjoyed prior to the IBM Plan's arbitrary and capricious decision of January 5, 2007, restoring Joseph's June 16, 2006 enrollment in the IBM Plan as a disabled dependent of Eileen.

39.     Joseph and Eileen have been harmed by Joseph's exclusion from the IBM Plan.  Eileen has been forced to obtain health benefits for Joseph outside of the IBM Plan, depriving her of the benefits of the reimbursement for health care costs otherwise payable to her under the IBM Plan.  Pursuant to 29 U.S.C. § 1132(a)(1)(B), Eileen and Joseph seek an

order enforcing their rights under the terms of the IBM Plan and confirming their rights to future benefits under the IBM Plan.

**Second Claim for Relief—**
**Statutory Penalties for Failure to Disclose**

40.    All prior paragraphs are incorporated by reference.

41.    Pursuant to 29 U.S.C. §§ 1132(c) and 1024(b)(4), Eileen and Joseph are entitled to separate awards of statutory penalties against Barnes as the Plan Administrator, in an amount equal to $100.00 per day, to be calculated separately for each document that has been withheld by the IBM Plan, as "each violation with respect to any single participant or beneficiary shall be treated as a separate violation."

42.    Eileen and Joseph's information requests were clear, direct, and relevant to the assessment of the parties' respective rights and obligations under the IBM Plan.  If the IBM Plan had been acting in accord with its fiduciary obligations, it would have been gathering and reviewing all of this information on its own, even before Eileen asked for it.  Not only did the IBM Plan fail to produce the requested documents and information in a timely fashion, but the plan fiduciaries repeatedly misrepresented to Eileen that no such documents existed or were available.  Because these refusals to disclose documents and information are egregious, repeated, and continuing, the maximum, $100.00 daily penalty for each day that each document was withheld is appropriate.

**Contracts Under Which the IBM Plan was Established—**
**Summary Plan Descriptions Withheld**

43.    Pursuant to 29 U.S.C. § 1024(b)(4), the IBM Plan was required to timely produce the Summary Plan Descriptions requested by Eileen and Joseph.  Although the IBM Plan timely provided the 1/1/06 SPD to Eileen and Joseph, the IBM Plan failed and refused to timely provide copies of the other, requested SPDs for plan years 2003 through 2007.  Since the IBM Plan took the position that Eileen had been required to submit a written application no later than June 9, 2004 in order to maintain Joseph's eligibility, the

versions of the IBM Plan in effect from June 9, 2004 to the present each constituted a "contract, or other instrument" under which the IBM Plan had been established and operated within the meaning of § 1024(b)(4).

44.    The August 5, 2003 SPD was in effect on June 9, 2004, and thus was the operative plan document at the time Eileen purportedly was required to submit a written application. According to the IBM Plan's own rationale, then, it was necessary to review the August 5, 2003 SPD to support such a decision. Further, absent review and consideration of each of the SPDs in effect from August 5, 2003 until the present, it is impossible to determine whether subsequent iterations of the SPD included amendments germane to the purported application requirement. In fact, it was only upon receiving the belated production of these additional SPDs that Eileen discovered that the purported requirement for submitting a written application did not even exist at the time the IBM Plan contended that Eileen had failed to satisfy this condition. Additional amendments germane to the interpretation of the IBM Plan were identified in subsequent iterations of the SPD. Thus, not only were the 2003 through 2007 SPDs contracts and other instruments required to be furnished pursuant to § 1024(b)(4), but they were also documents necessary to full and fair consideration of Eileen and Joseph's claim.

45.    Eileen and Joseph requested not only the Summary Plan Descriptions for calendar years 2003 through 2007, but also asked for the actual plan documents for each of those plan years, as well as all modifications and amendments to those plan documents. The IBM Plan has advised Eileen and Joseph that there are no such plan documents for 2003 through 2007, and that the IBM Plan has been memorialized only in Summary Plan Descriptions. If it is determined through discovery that underlying plan documents exist for all or a portion of those plan years, statutory penalties should be imposed for the IBM Plan's failure and refusal to provide such plan documents upon request.

**"Other Instruments"**
**Under Which the IBM Plan is Operated**

46.    Section 1024(b)(4) not only calls for the furnishing of summary plan descriptions and contracts under which the IBM Plan was established, but also calls for the furnishing of other documents and instruments under which the IBM Plan is *operated*. ERISA regulations governing the IBM Plan specify a number of documents and other instruments under which the IBM Plan is required to be operated—including formal documents and records generated during the course of evaluating and reviewing claims for benefits.

47.    The formal records, documents, and instruments used to operate the IBM Plan that were requested by Eileen and Joseph and withheld in violation of § 1132(c) include, without limitation:

    a.   formal documents and instruments (electronic or otherwise) constituting the official records of the IBM Plan, used by the IBM Plan for chronicling its contacts and communications with plan participants and claimants, including each document, record, or other electronic or hard copy instruments reflecting the contacts and communications between Eileen and the IBM Plan, as requested in Eileen's June 12, 2007 letter;

    b.   formal documents and instruments (electronic or otherwise) constituting the official records of the IBM Plan, used by the IBM Plan to memorialize its evaluation of claims, the conclusions reached, and the administrative actions taken pursuant to such decisions, including each document, record, or other electronic or hard copy instruments reflecting the involvement, activities, communications, actions, and conclusions reached by eachof the IBM Plan representatives who initially confirmed Joseph's entitlement to enrollment effective January 1, 2007, and later decided to reverse this decision and expel Joseph from the IBM Plan, as requested in Eileen's June 12, 2007 letter;

    c.   formal documents and instruments (electronic or otherwise) constituting the official records of the IBM Plan, used by IBM to memorialize the decisions reached with respect to similarly situated individuals, necessary to ensure the consistent treatment of claims for benefits and eligibility determinations as required by ERISA, including each document, record, or other electronic or hard copy instruments  reflecting the circumstances surrounding the IBM Plan's treatment of requests for initial or continued

eligibility for similarly situated disabled dependents seeking enrollment in
the IBM Plan on or after attaining the age of 23, as requested in Eileen's
June 12, 2007 letter; and

d.  any additional formal documents and instruments (electronic or
otherwise) falling within Eileen and Joseph's information requests that
are later determined through discovery in this action to have been
withheld by the IBM Plan.

### Third Alternative Claim for Relief—
### Breach of Fiduciary Duty against Barnes

48.    All prior paragraphs are incorporated by reference.

49.    In addition to Eileen and Joseph's entitlement pursuant to 29 U.S.C.

§ 1132(a)(1)(B) to "enforce [their] rights under the terms of the plan," and to "clarify [their]

rights to future benefits under the terms of the plan," as sought in Count I of this Amended

Complaint, Eileen and Joseph also are entitled to pursue "other appropriate equitable relief"

for multiple violations of Barnes' fiduciary duties, pursuant to 29 U.S.C. § 1132(a)(3).

### Violation of §§ 1022(a) and (b)—
### Enrollment of Joseph in the IBM Plan as Other Equitable Relief

50.    Eileen and Joseph maintain that the express terms and conditions of the IBM

Plan plainly support the IBM Plan's *initial determination* on June 16, 2006, to enroll Joseph in

the IBM Plan effective January 1, 2007.  The IBM Plan, however, maintains otherwise, and

claims that its "interpretation" of the subject provisions of the IBM Plan somehow supports

its subsequent, January 5, 2007 decision to reverse its original determination and to expel

Joseph from the IBM Plan.  Eileen and Joseph dispute that there is a rational interpretation

of the IBM Plan that would support the IBM Plan's January 5, 2007 decision.

51.    In the event the Court reaches a different conclusion, however, and

concludes that the subject provisions are ambiguous, and then adopts the IBM Plan's

interpretation of the plan, Eileen and Joseph still are entitled to "other appropriate equitable

relief" pursuant to 29 U.S.C. § 1132(a)(3), in the form of an order compelling Joseph's

enrollment in the IBM Plan.  Such an order is appropriate and necessary redress for Barnes'

breach of her fiduciary and statutory duties to publish an SPD that employs plan language

calculated to be understood by the average plan participant; that is sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan; and that clearly sets forth the plan's requirements for eligibility, as well as the circumstances that may result in disqualification, ineligibility or denial or loss of benefits.  *See* 29 U.S.C. § 1022(a) and (b).  This alternative relief is requested only in the event the Court fails to award the relief requested by Eileen and Joseph in Count I of this Amended Complaint.

### Waiver and Estoppel— Enrollment of Joseph in the IBM Plan as Other Equitable Relief

52.     In the event the Court fails to award the relief requested in Count I of this Amended Complaint, Eileen and Joseph also are entitled to "other appropriate equitable relief" in the form of an order compelling Joseph's enrollment in the IBM Plan, premised upon principles of estoppel and waiver.  Joseph was expelled from the IBM Plan premised upon an alleged failure to satisfy a condition precedent to enrollment—namely, the submission of a written application within 60 days prior to Joseph's attaining age 23.  This purported failure of a condition precedent was the only basis articulated by Barnes and the IBM Plan in support of the January 5, 2007 reversal of the prior, June 16, 2006 decision to enroll Joseph in the IBM Plan.  Barnes and the IBM Plan are estopped from expelling Joseph from the IBM Plan based on the combination of (a) the purported ambiguity of the SPD; and (b) the representations by IBM Plan representatives that no application or other steps were required to maintain Joseph's eligibility or to enroll Joseph in the IBM Plan.

53.     Eileen and Joseph detrimentally relied upon the IBM Plan's publication of an SPD that did not comply with the requirements of § 1022(a) and (b), and upon information and belief, upon the conduct of the IBM Plan in dispensing information, advice, and instructions to plan participants concerning eligibility requirements prior to Joseph's attaining age 23, consistent with the information, advice, and instructions provided to Eileen on June 16, 2006.  If Eileen ever had been provided with contrary instructions or

18

interpretations prior to Joseph's attaining age 23, she would have taken whatever steps were necessary to preserve Joseph's eligibility as a disabled dependent.

54.     Similarly, as a result of this same conduct and statements, Barnes and the IBM Plan waived any right that might otherwise have existed to enforce the condition precedent of submitting a written application.  Consideration was provided for such waiver in the form of Eileen's continued service as an employee from June 16, 2006 until the date of her retirement.

### Alternative Relief for Breaches of Fiduciary Duty— Enrollment of Joseph in the IBM Plan

55.     Based on each of the alternative grounds set forth in this Count III, and only in the event the relief requested in Count I of this Amended Complaint is not granted, Eileen and Joseph seek an order for such "other appropriate equitable relief" in the form of an order immediately reinstating Joseph in the IBM Plan, and ordering such other and further relief as this Court deems equitable.

### Fourth Claim for Relief— Attorneys' Fee Award

56.     All prior paragraphs are incorporated by reference.

57.     There is no reasonable or substantial justification for the "interpretation" put forward by Barnes and the IBM Plan to exclude Joseph from the IBM Plan.  Pursuant to 29 U.S.C. § 1132(g)(1), Eileen and Joseph are entitled to recover an award of reasonable attorneys' fees and costs in this action from January 8, 2007 to the date of the entry of judgment, based upon the violations set forth in Counts I and II of the Amended Complaint.  Further, even if it is determined that an ambiguity in the subject plan language would otherwise support the IBM Plan's January 5, 2007 reversal of its June 16, 2006 decision, Eileen and Joseph likewise are entitled to recover an award of reasonable attorneys' fees and costs based upon the violations set forth in Count III of this Amended Complaint.

58.     If the defendants had fairly and honestly considered the plan language and points advanced by Eileen, had gathered, reviewed, and produced the documents and information requested by Eileen, and had complied with the basic, statutory and regulatory obligations governing the administration of the IBM Plan, there would have been no need for Eileen to file a lawsuit.  Judgment should be entered in favor of Eileen and against Barnes and the IBM Plan, awarding reasonable attorneys' fees and costs in an amount to be determined by this Court.

WHEREFORE, Eileen and Joseph request that the Court enter an order granting the following relief:

A.     On Count I of the Amended Complaint, an order enforcing Eileen and Joseph's rights under the terms of the IBM Plan, restoring Eileen and Joseph to the position they enjoyed prior to the IBM Plan's arbitrary and capricious reversal of its initial, June 16, 2006 decision, and confirming Eileen and Joseph's rights to future benefits under the terms of the IBM Plan, by ordering Joseph's immediate enrollment in the IBM Plan;

B.     On Count II of the Amended Complaint, an order providing for (1) the imposition of statutory penalties in favor of Eileen in an amount equal to the maximum penalty of $100.00 per day, per document and item of data withheld, to be imposed cumulatively for each, successive request for the same document; and (2) the imposition of statutory penalties in favor of Joseph, identical to the award entered in favor of Eileen, in an amount equal to the maximum penalty of $100.00 per day, per document and item of data withheld, to be imposed cumulatively for each, successive request for the same document;

C.     On Count III of the Amended Complaint, and only in the event the relief requested in Count I is not provided, an order for such "other appropriate equitable relief" redressing breaches of fiduciary duties owed to Eileen and Joseph, in the form of an order requiring Joseph's immediate enrollment in the IBM Plan;

D.      On Count IV of the Amended Complaint, an order granting reasonable attorneys' fees and costs incurred on behalf of Eileen and Joseph from January 8, 2007 to the present; and

E.      On Counts I through IV of the Amended Complaint, an order granting such other and further relief that the Court deems equitable and appropriate.

Dated this 3rd day of April, 2008.

Respectfully submitted,


                    **/s/ Paul F. Heaton**
Paul F. Heaton
Brian G. Cahill
GASS WEBER MULLINS LLC
309 North Water Street, 7th Floor
Milwaukee, Wisconsin 53202
Tel:    414-223-3300
Fax:    414-224-6116
heaton@gasswebermullins.com
cahill@gasswebermullins.com

and

William G. Beatty
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, IL 60603-5404
Tel:    312-372-0770
Fax:    312-473-9828
Beattyw@jbltd.com


Attorneys for Plaintiff, Eileen M. Huss