EXHIBIT 1

Case 1:07-cv-07028     Document 23-2     Filed 04/03/2008     Page 1 of 13



GASS WEBER MULLINS LLC

309 N WATER ST   MILWAUKEE WI 53202
TEL 414 223 3300   FAX 414 224 6116
WWW.GASSWEBERMULLINS.COM

PAUL F. HEATON
DIRECT DIAL: 414 224-7695
heaton@gasswebermullins.com

June 12, 2007

IBM Plan Administrator
Employee Benefits
c/o IBM Employee Services Center
5411 Page Road
Durham, NC 27703

    Re:    Appeal of Eligibility Decision
            Employee: Eileen M. Huss ( ███████ )
            Dependent: Joseph R. Huss, Jr.
            **Work Item # W011517-29MAR07**

Dear Plan Administrator:

      I am writing to appeal IBM's April 26, 2007 Decision declining to enroll Joseph R. Huss, Jr., in the IBM Medical and Dental Plan ("the IBM Plan"), issued by IBM in response to my correspondence of March 27, 2007. *See* Tabs 1 and 2 (3/27/07 and 4/26/07 Correspondence).

      Eileen M. Huss is a 30-year veteran of IBM, who retired on December 31, 2006. Eileen's son, Joseph, is a mentally disabled 25-year old young man, born on August 8, 1981. Eileen has been a participant in the IBM Plan throughout her entire career, and throughout her son's entire, 25-year lifetime. Although Joseph has always been a dependent of Eileen eligible to enroll in the IBM Plan throughout his entire life, Joseph has not been enrolled in the IBM Plan since 1995.

      In August of 2006, four months before her retirement, Eileen contacted the IBM Employee Services Center to ask about enrolling Joseph in the IBM Plan. Eileen was told that nothing further needed to be done to enroll Joseph, and that IBM's enrollment records would be updated accordingly.[1]

---

[1] Because the phone call seemed uneventful at the time, Eileen does not know the name of the employee at the IBM Employee Service Center who affirmed that Joseph would be enrolled. Eileen since has been told, however, that IBM's records reflect Eileen's contact with this individual. In light

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 2

      Immediately prior to her retirement, however, Eileen was told by Todd Rogers in the IBM Benefits Administration unit that Joseph would not be enrolled in the program as Eileen had been promised back in August. Mr. Rogers told Eileen that because she had not submitted an application to enroll Joseph in the "23-years and older disabled dependent program" under the IBM Plan 60 days prior to Joseph's 23rd birthday (August 8, 2004), Joseph was permanently barred from enrolling in the IBM Plan. IBM reaffirmed Mr. Rogers' determination in the April 26, 2007 Decision that is the subject of this appeal.

### IBM's Plan Guarantees the Right to
### Make New Enrollment Decisions Each and Every Year

      Because IBM's April 26th Decision is not supported by the plain language of the IBM Plan, this Decision must be reversed, and Joseph must be enrolled in the IBM Plan. There is simply no "60-day window" requirement to *continue eligibility* under the IBM Plan. Although such an application is required for someone *currently* receiving benefits to maintain the *continued receipt of health benefits*, this requirement has no application where, as here, Joseph was not receiving benefits at the time he attained age 23. Because Joseph was not receiving benefits, he had neither a reason nor the ability to apply for the "*continuation*" of health benefits, and thus, there is no contractual impediment to Joseph's enrollment now.

      IBM's April 26, 2007 Decision ignores the salient, *controlling* provisions of the IBM Plan.[2] Section 2.1 of the IBM Plan, titled *Benefits Enrollment*, distinguishes between the three, separate concepts of (1) *eligibility* to participate in the Plan, (2) *enrollment* in the Plan, and (3) *receipt of benefits* under the Plan: "All *eligible* IBM employees, surviving spouses/

---

of IBM's April 26th Decision, among the items requested in this letter is a printout of IBM's electronic record or case notes reflecting IBM's initial affirmation of Joseph's eligibility, the identification of the date, time, and employee participating in the call, and a description of any steps taken by the employee to attempt to enroll Joseph in the program.

[2] IBM has provided Eileen with the 2003, 2004, 2005, and 2006 iterations of Document Number USHR 106, the Summary Plan Description titled, *About Your Benefits—Health Care*. IBM maintains that an application should have been submitted on or before June 9, 2004—60 days prior to Joseph's attaining age 23. Accordingly, unless otherwise noted, all citations in this appeal letter are to the *August 5, 2003 version* of the *About Your Benefits—Health Care* SPD, since the effective date of the next year's SPD is September 9, 2004. For purposes of convenience of citation, I have enclosed at Tab 5 a bates-stamped version of the Summary Plan Descriptions produced by IBM.

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 3

domestic partners, and dependents must be *enrolled* in order to *receive* IBM medical, dental, and vision *benefits*." (IBM000018) (emphasis supplied).

      Contrary to the suggestion that Eileen missed a "one shot" opportunity of enrolling Joseph in the Plan, the IBM Plan unambiguously promised Eileen that she would be given a chance to enroll Joseph in the Plan each and every year: "*Each year*, during an enrollment period usually held in the fall, *you will have the opportunity to elect coverage for* yourself and *any other eligible family members you wish to enroll* for the *upcoming plan year* (normally January 1 through December 31)." (IBM000018) (emphasis supplied). Pursuant to this plain, contractual language, Eileen's August 2006 request to enroll Joseph in the Plan should have resulted in Joseph's enrollment for the following plan year, enabling Joseph to receive health insurance benefits effective January 1, 2007.

      Nor is § 2.1 the only place in the SPD that IBM promises Eileen a yearly opportunity to enroll Joseph as a dependent in the IBM Plan. Just a few paragraphs down, IBM once again promises Eileen an annual opportunity to enroll Joseph in the IBM Plan. In § 2.3 of the SPD, aptly titled *How the Program Works*, IBM promised Eileen and its other employees: "*Each year*, during an enrollment period usually held in the fall, *you will have the opportunity* to elect medical, dental and vision coverage *for yourself and any eligible family members you wish to enroll* for the *upcoming plan year* (normally January 1 through December 31)." (IBM000019) (emphasis supplied).

      Confronted with these repeated, contractual promises of an *annual* enrollment opportunity, IBM now contends that § 3.1.1.4 of the SPD somehow undercuts those promises and deprives Eileen of her annual enrollment rights. There is no such provision contained anywhere in § 3.1.1.4 or anywhere else in the entire SPD. Although § 3.1.1.4 requires a *currently enrolled* dependent to submit an application before his 23rd birthday in order to *continue to receive health benefits* through the IBM Plan, there is no corresponding requirement for continued *eligibility* under the IBM Plan, nor is there a corresponding requirement for someone who has not been receiving health benefits to submit such a 60-day window application in order to initially *enroll* in the IBM Plan.

      Ignoring the repeated, unambiguous guarantees of annual enrollment rights, IBM erroneously relies upon a sentence in the SPD that provides: "If you think your child will meet the above criteria at age 23, you <u>must</u> request *continuation of IBM health benefits* at least 60 days before his or her 23 [sic] birthday." (§ 3.1.1.4, IBM000039) (italicized emphasis supplied)  Prior to attaining age 23, Joseph *was not receiving* IBM health benefits, was in no position *to apply for the "continuation* of IBM health benefits," and was not subject to a deadline applicable only to someone *who was* seeking the

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 4

"*continuation* of IBM health benefits."  This sentence in the SPD simply does not apply to someone in Joseph's position.

      Although IBM's April 26, 2007 Decision letter claims that this sentence in § 3.1.1.4 of the SPD requires the submission of an application "regardless of whether the child is enrolled in IBM benefit coverage at the time the child reaches age 23," this bald assertion is neither supported by the actual Plan language nor common sense.  To the contrary, how could this sentence *possibly* apply to someone (like Joseph) who was not enrolled in the IBM Plan?  Someone who is *not enrolled* in the IBM Plan is not, by definition, *receiving* IBM health benefits, and thus is not, by definition, able to apply for the "*continuation* of IBM health benefits."  IBM's conclusion that Joseph is forever barred from receiving benefits ignores *what the contract actually states*:



What the SPD *actually* states …

"If you think your child will meet the above criteria at age 23, you <u>must</u> request **continuation of IBM health benefits** at least 60 days before his or her 23rd birthday."*

\* Source—8/5/2003 SPD, IBM000039



What the SPD does *not* state …

"If you think your child will meet the above criteria at age 23, you <u>must</u> **apply for your child's enrollment** in the program at least 60 days before his or her 23rd birthday."#

What the SPD does *not* state …

"If you think your child will meet the above criteria at age 23, you must seek **continuation of your child's eligibility under the IBM Plan** at least 60 days before his or her 23rd birthday."#

\# Source—Does not exist          \# Source—Does not exist

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 5

      The balance of the pivotal portion of § 3.1.1.4 of the SPD—also ignored in IBM's April 26, 2007 Decision letter—dispels any notion that Eileen and Joseph had only a one-time opportunity to enroll for important benefits that should protect Joseph for a lifetime.  The operative paragraph of § 3.1.1.4 makes clear that an *eligible* dependent maintains his eligibility even *after* attaining age 23: "A child who *was eligible* under the plans *immediately before* reaching age 23 . . . and who, but for having reached age 23 would still be eligible, *will be eligible to enroll upon attainment of age 23* . . . and thereafter to remain *continuously* eligible *beyond the age of 23* if, *at the time the child enrolls*," he meets the eligibility requirements.  (IBM000038) (emphasis supplied).

      Because Joseph turned 23 on August 8, 2004, IBM has argued that Joseph was no longer eligible to enroll in the IBM Plan after June 9, 2004—60 days prior to Joseph's birthday.  The SPD makes clear, however, that Joseph was eligible to enroll "*upon attainment* of age 23," and remained "continuously *eligible beyond the age of 23*" if "*at the time the child enrolls*" he still meets the eligibility requirements.  (IBM000038)  Unlike the *inapplicable* provision erroneously cited by IBM—which pertains to *current* Plan participants seeking the "*continuation* of IBM health benefits"—the controlling provision of the SPD pertains to dependents—such as Joseph—who are merely *eligible* for benefits upon attaining age 23.  The SPD provision for the *continuation of benefits* imposes a 60-day deadline, presumably to avoid the possibility of an unanticipated *discontinuation* of much-needed health benefits.  When addressing eligibility—as opposed to the *continuation of benefits already being received* by an active plan participant—the SPD makes clear that *eligibility* begins "upon attainment" of age 23, and "*continuously . . . beyond the age* of 23" so long as "at the time the child enrolls" he meets the eligibility requirements.  (emphasis supplied).  Contrary to the "one shot" opportunity argument advanced by IBM, the SPD makes clear that Joseph's *eligibility* continues "*beyond the age of 23*."

      The final bullet point of § 2.3 of the August 5, 2003 SPD dispels any doubt whether the SPD affords Joseph an annual opportunity to enroll in the IBM Plan so long as he continues to meet the eligibility requirements.  Contrary to IBM's contention of a "one shot" opportunity to enroll Joseph in the IBM Plan, the SPD expressly provides: "Please note, *you may opt out* or waive coverage for your dependent child *one year and re-enroll* your child during *the next or subsequent annual enrollment period* as long as they continue to meet the eligibility criteria."  (IBM000007)  In the August 5, 2003 and September 9, 2004 Summary Plan Descriptions, this language appeared only in the introductory portion of the SPD in § 2.3.  Beginning with the December 20,

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 6

2005 edition of the SPD, however, and continuing with the January 1, 2006 edition,[3] IBM deliberately moved this language into § 3.1.1.4—the very section of the SPD that contains the provision mistakenly relied upon by IBM—and the very section of the SPD addressing Joseph's right to enroll in the benefits program for mentally disabled dependents age 23 and older.  (IBM000328)  Having deliberately moved this definitive language into the very section addressing the enrollment rights at issue in this appeal, IBM cannot now argue that Joseph had only a one shot opportunity to enroll for these benefits.

      Recapitulating the points mandating Joseph's enrollment in the IBM Plan:

- The introductory section of the IBM Plan repeatedly promised Eileen and Joseph the *annual opportunity* to enroll in the IBM Plan—twice in § 2.1 (IBM000018), and once again in § 2.3. (IBM000019)

- The specific section of the IBM Plan addressing benefits for mentally disabled dependents age 23 and older *expressly states* that Joseph was eligible for these benefits "upon attainment of age 23," and that he would "remain continuously eligible *beyond the age of 23*," so long as "at the time [Joseph] enrolls," he meets the eligibility requirements.  (IBM000038)

- Section 2.3 of the IBM Plan (and now § 3.1.1.4 of the IBM Plan) *expressly rejects* the notion of a "one shot" opportunity to enroll, stating in no uncertain terms that Eileen "may opt out or waive

---

[3] The most recent version of the SPD was *published* on December 22, 2006, with an *effective date* of January 1, 2006.  (IBM000913.)  Similarly, the SPD for the "2005 Plan Year" purportedly was published on December 20, 2005.  (IBM000297.)  It is unclear how IBM could rely upon an edition of the SPD purportedly applicable to benefits due and owing throughout calendar years 2005 and 2006, when the SPDs were not published until December 20th in 2005 and 2006.  An SPD purportedly effective on January 1st of the year, but is not published until December 20th of the year, does not serve any meaningful purpose.  What good is an SPD that is not published until there are only fifteen days left in the calendar year to which it supposedly applies?  If, on the other hand, IBM published multiple editions of the SPD throughout calendar years 2005 and 2006, and the December 20th editions are just the last in a series of periodically published updates, then Eileen has not been provided with the documents she has requested.  Any missing SPDs should be produced to Eileen immediately.

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 7

> coverage for [Joseph] one year and re-enroll [Joseph] during the next or subsequent annual enrollment period as long as [Joseph] continue[s] to meet the eligibility criteria." (IBM000007)

- IBM deliberately modified its SPD to move the language promising an annual right to opt into and out of coverage into the very section addressing Joseph's enrollment options for the benefits program for mentally disabled dependents age 23 and older. There is no question this annual enrollment option applies to the age 23 and older benefits program for mentally disabled dependents.

In the face of these clear and affirmative grants of annual enrollment options, IBM's sole basis for blocking Joseph's enrollment in the IBM Plan is a clause applicable only to *current* plan participants who want to be avoid the possibility of their IBM health benefits being unexpectedly *discontinued* for failure to satisfy the eligibility requirements applicable to dependents age 23 and older. The provision erroneously relied upon by IBM requires the submission of an application only for the "*continuation* of IBM health benefits." *See* § 3.1.1.4. (IBM000039) The clause does not set a deadline for enrollment. The clause does not set a deadline for continuation of eligibility. The clause sets a deadline for *continuation* of the payment of *benefits*. Having promised in numerous places throughout the SPD that Joseph could opt into and out of the program on an annual basis, having specifically promised that Joseph is "continuously eligible beyond the age of 23" so long as he is eligible "at the time [he] enrolls," it is astounding that IBM would rely upon this inapposite, inapplicable language to deny Joseph access to these much needed benefits. So long as the plain meaning of words in the English language prevails when interpreting contract rights, a contractual requirement for the "continuation of IBM health benefits" applies to one thing and one thing only—the *continuation* of IBM *health benefits*.[4]

---

[4] IBM knows the difference between continuation of *eligibility* on the one hand, and the continuation of benefits, or coverage, on the other hand—as made clear by a glance at the contrasting usages in the 2003 SPD. *See* § 2.1—"All **eligible** IBM employees … must be **enrolled** in order to **receive** IBM medical, dental and vision benefits." (IBM000011) (emphasis supplied); and § 2.3.1—"If you . . . are **eligible** . . . to elect . . . coverage through IBM . . . you can **enroll** for coverage in one of two ways. . . ." (IBM000020) *See also* § 2.3.2—"If you are leaving the company and meet certain age and service requirements, you may be *eligible* to continue certain benefits coverage . . . ." (IBM000021); § 3.1.1.2—"continue to be eligible for SRMO" (IBM000036); § 3.1.1.2—"Eligible employees must formally elect SRMO coverage within 60 days after retirement . . . and must make timely payment of

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 8

## IBM's Own Employee Interpreted the Plan as
## Confirming Joseph's Continued Eligibility to Enroll

Given the overwhelmingly clear language affording Eileen an annual right to enroll Joseph in the benefits program for mentally disabled dependents age 23 and older, there should be no need to go beyond the four corners of the SPD to resolve this appeal. Nonetheless, confronted with IBM's April 26, 2007 determination, the initial, favorable enrollment decision announced to Eileen in August 2006 plays an important role. IBM told Eileen in the SPD that "most questions can be answered by the IBM Employee Services Center …." *See* § 5.1, ERISA INFORMATION. (IBM000147) Naturally, Eileen directed her enrollment questions to the IBM Employee Services Center. When Eileen called the IBM Employee Services Center in August of 2006, she was told by the responsible employee that Joseph would be added to the IBM Plan. The IBM Plan employee making this statement no doubt was guided by the plain language of the SPD set forth in this letter, as well as IBM's more recent modifications to the SPD making it even clearer that Joseph was eligible to be enrolled. If the position now advanced by IBM were even a *remotely* reasonable interpretation of the controlling language of the IBM Plan, IBM's own, initial interpretation of an at best ambiguous clause must be adopted for the benefit of Joseph. IBM wrote the plan, IBM's trained employee interpreted the plan, and now IBM must give Joseph the benefit of that interpretation.

In *Central States v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000), the Seventh Circuit held that "[f]ederal common law rules of contract interpretation apply when we consider a contract in the context of an ERISA claim." When confronted with an

---

the applicable contribution amounts on an ongoing basis ***in order to remain eligible***." (IBM000036); § 3.1.1.5—"eligibility for coverage will continue instead under the prior IBM retiree medical program." (IBM000039); § 3.1.1.5—"In such cases, eligibility continues . . . ." (IBM0000 39); § 3.1.1.5—"eligible children may be eligible for continued access to IBM coverage" (IBM000040); § 3.1.4.1—"To continue coverage under the Plan, you have the option to purchase continuation coverage for a limited time. . . ." (IBM000046); §§ 3.3.7.19, 3.3.7.22—"to determine continued eligibility for benefits" (IBM000068); § 3.3.9.3—"will continue to be eligible for benefits" (IBM000074). Indeed, in multiple clauses of the SPD, IBM specifically contrasts the competing notions of eligibility for benefits and actual receipt of benefits. *See* § 3.1.3 ("IBM Medical and Dental Benefits Plan will ***enroll*** participants and ***eligible*** family members, and determine and pay ***benefits***, without taking into account their ***receipt*** of, or ***eligibility for***, medical assistance under a federally approved state Medicaid program." (IBM000045); and § 3.1.4.1 ("Information concerning ***enrollment***, ***coverage*** and ***eligibility*** may be obtained by contacting the Employee Services Center . . . .") (IBM000047).

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 9

ambiguous plan provision, the "task of the court is to determine what 'the contracting parties … intended the clause to mean.'" *Id.* In such cases, "the court may look at extrinsic evidence to determine the meaning the contracting parties attached to the ambiguous term." *Id.* Among other items of extrinsic evidence, the court may look at the parties' own, practical interpretation of the disputed provision prior to the dispute. *Id.* at 913, and 914 n.3. In this case, that brings us to the interpretation of the IBM Plan announced to Eileen during her August 2006 contact with the IBM Employee Services Center employee charged with the responsibility of answering employees questions about how the IBM Plan is interpreted and applied.

Not only did the IBM Plan employee interpret the SPD as affording Joseph a right to enroll for benefits, but it is probable (if we assume a competent, well trained employee would dispense identical advice when confronted with identical questions) that the same interpretation was given by this employee to other Plan participants over the years. Unless that employee was trained differently than all the other IBM Plan employees, moreover, it is probable that other IBM Plan employees gave precisely the same answer to other employees over the years.

For the same reason, the notes, emails, drafts, and other evidence of the drafting process leading to the modified, December 2005 SPD are all highly probative evidence of IBM's own construction of the IBM Plan as affording an annually renewing right to opt in to and out of the program as often as participants chose to do so. IBM cannot maintain that the SPD language promising annual opt-in and opt-out rights does not apply to the age 23 and over benefits program for mentally disabled dependents when it specifically moved this language into the very section of the SPD addressing that benefits program.

In short, the interpretation provided by IBM's Plan representative in August of 2006 must carry the day, as such interpretations are "particularly compelling" evidence and must have a "great, if not controlling, influence" in resolving ambiguous clauses in favor of plan fiduciaries (such as Eileen and Joseph) seeking payment of the benefits to which they are entitled under the IBM Plan. *Kroger*, 226 F.3d at 914 n.3. This compelling evidence is even more persuasive, of course, when it is considered that it is IBM who wrote the plan—not Eileen or the other plan fiduciaries. Ambiguous policy

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 10

provisions must be resolved against the drafter and in favor of the insured, *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992), providing yet another reason why IBM must enroll Joseph in the Plan.[5]

## Conclusion

Eileen devoted over 30 years of her professional life to IBM. Eileen served IBM extremely well over those years, and now richly deserves each and every benefit and other entitlement promised to her as an employee—and as a retiree—of IBM. Eileen is not asking for favors or special treatment—she is asking only that IBM live up to the plain language of the Plan.

While each and every employee and retiree of IBM, as a fiduciary, is entitled to his or her contractual benefits, IBM's wrongful expulsion of a mentally disabled young man from the IBM Plan is troubling in the extreme. Parents such as Eileen who are called upon to overcome the constant, pressing challenges of raising, caring for, and protecting a mentally disabled child are asked to assume burdens that might justifiably cause Atlas to shrug. Nothing comes easy to these parents and their families—whether it is fighting school districts for their child's right to be educated, struggling to find the best, most nurturing environments during the different phases of their child's development, agonizing about whether they have done everything feasible to help their child achieve some measure of fulfillment despite their disability, or shouldering the endless financial burdens required to meet the unique needs of these children. Nor has life been easy for Joseph, a young man who was never blessed with the simple ability to express his thoughts, his concerns, and his emotions through the spoken word. Eileen and Joseph are not asking for sympathy or favors because of these challenges—they

---

[5] Unless IBM reverses its mistaken determination in the April 26, 2007 Decision and enrolls Joseph in the IBM Plan, Eileen requests that IBM provide her with the additional information set forth in Tab 4. *See* Tab 4, Request for Documents and Information.) As IBM acknowledges in § 5.1 of the SPD, IBM owes a fiduciary duty to Eileen and Joseph. If IBM presses its new interpretation of the Plan, the information requested in this appeal letter is critically important to a full and fair resolution of Eileen and Joseph's rights. It is my assumption that IBM will have an equal interest in assembling and reviewing this information to be sure that it reaches the correct result, and will agree with the importance of sharing this information with Eileen and Joseph. Since seventh circuit case law makes clear that such information is highly relevant to reaching the correct result, IBM should make every reasonable effort to ensure that such information is identified, assembled, and carefully considered before precipitously rejecting Joseph's eligibility for enrollment in the IBM Plan.

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 11

are simply asking IBM not to add to these burdens by wrongfully excluding a mentally disabled young man from the Plan based upon an "interpretation" that finds no basis in the four corners of the SPD.

      IBM's "interpretation" of the SPD is not only unsupported by the SPD language, but also is the paradigm "trap for the unwary," resulting in the permanent loss of valuable, lifetime benefits without warning to the affected plan participants. It is difficult to imagine that IBM intends to impose such draconian results upon its fiduciaries with no effective notice of this potential. If IBM really intends to impose such a barrier to the receipt of these important benefits, then it should do so *prospectively* by re-writing the Plan in plain, conspicuous language that Eileen, its own employees, and other plan participants could easily read and understand. Sections 2.1 and 2.3 do not say that participants have an annual enrollment right *subject to important exceptions and caveats buried deep in the SPD*. Section 3.1.1.4 itself does not warn—anywhere—that *eligibility* for benefits at age 23 and beyond is subject to a one-time opportunity within a narrow, 60-day window, to secure those rights for the rest of the dependent's life. Nothing in the SPD warns Eileen or other unsuspecting fiduciaries that important rights could be forever waived based upon a single sentence in the SPD that does not even mention continuation of eligibility. Instead, a plan participant whose dependent *is not currently receiving* IBM health benefits will conclude—as did Eileen *and* IBM's own employee here—that a procedure for applying for the *continuation* of IBM health benefits does not apply to her.

      As the Seventh Circuit stated in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 587 (7th Cir. 2000), a summary plan description must be written "in a manner calculated to be understood by the average plan participant, and [be] sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." This standard is not met, of course, if the plan language "leave[s] the employee . . . guessing as to the appropriate course of action." *Id.* at 588. IBM's *own employee* concluded that Joseph could be enrolled in this Plan in August of 2006. If IBM's own employee did not reach the conclusion now advanced by IBM—a professional trained to interpret the Plan and answer questions posed by Plan participants—the Plan obviously falls far short of language "calculated to be understood by the average plan participant."

IBM Plan Administrator
Employee Benefits
June 12, 2007
Page 12

  It is difficult to imagine how IBM, after reviewing the provisions of the Plan cited and discussed in this letter, could conclude that it has drafted a plan that "reasonably apprises" participants such as Eileen that they have a single, 60-day window to secure lifetime benefits for their mentally disabled children. Accordingly, Eileen renews her request that Joseph be enrolled in this program without further delay.

  I have enclosed the documents requested in the April 26, 2007 Decision. *See* Tabs 1, 2, and 3. If you have any questions or require any additional information, please do not hesitate to call.

            Very truly yours,

            Paul F. Heaton

PFH/js

Encs.

cc  Ms. Eileen Huss