# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EILEEN M. HUSS, individually and as Guardian for JOSEPH R. HUSS, JR., <br><br> Plaintiff, <br><br> v. <br><br> IBM MEDICAL AND DENTAL PLAN and R.A. BARNES, in her capacity as PLAN ADMINISTRATOR, <br><br> Defendants. | No. 07 C 7028 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

This is an ERISA suit to overturn the denial of enrollment eligibility for Joseph R. Huss, Jr., Eileen Huss's 25-year old mentally disabled son, in the employee welfare plan sponsored and administered by Eileen's former employer, IBM. Eileen Huss ("Huss") filed a four-count amended complaint under the Employee Retirement Income Security Act ("ERISA") against the IBM Medical and Dental Plan (the "Plan") and the Plan Administrator (collectively "IBM" or "Defendants"). Huss seeks relief in the form of health benefits due to her son pursuant to 29 U.S.C. § 1132(a)(1)(B) (Count I) and statutory damages from the Plan and the Plan Administrator for their failure to provide requested documents pursuant to 29 U.S.C. §§ 1024(b)(4) and 1132(c) (Count II). Specifically, Huss claims that the Plan incorrectly interpreted the eligibility requirements of the Over Age 23 Disabled Dependent Child provision set forth in the Plan and that the decision to deny Joseph's enrollment in the Plan was arbitrary, capricious, and unreasonable. Huss further claims that Defendants failed to produce certain documents that were critically important to a full and fair resolution of her and Joseph's rights. Count IV seeks

attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). I dismissed Count III, Huss's claim for breach of fiduciary duty, on June 30, 2008. The parties now cross move for summary judgment on Counts I and II.

I.      Facts

Plaintiff Eileen M. Huss ("Huss") is a retired International Business Machines Corporation ("IBM") employee and legal guardian for her disabled son, Joseph R. Huss, Jr. Defendant IBM Medical and Dental Plan ("IBM Plan" or the "Plan") is the legal entity through which IBM provides employee benefits to its active and retired employees. The benefits program offered by IBM is governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan is designed to provide health, dental, and disability benefits to eligible employees of IBM. Defendant R.A. Barnes is the Plan Administrator for the IBM Plan, operating out of the Office of the Plan Administrator at the IBM Employee Services Center. In her capacity as Plan Administrator, Barnes has the sole discretion to make the final decision with respect to eligibility under the Plan:

> The Plan Administrator has the sole discretion to make the final decision with respect to eligibility under the IBM Medical and Dental Plan. The decision will take into account any factors determined to be relevant within the intent of the Plan and consistent with the tax-qualified status of the Plan.
>
> Eligible individuals will receive coverage under the IBM Medical and Dental Benefits Plan only if and while enrolled for coverage.

On December 31, 2006, Huss retired as an IBM employee after more than 30 years of service. During her employment and upon her retirement, Eileen was at all times material both a participant and a beneficiary under multiple iterations of the IBM Plan. Eileen's son, Joseph, was born on August 8, 1981. Since his birth, Joseph has suffered from a severe mental disability that

2

renders him incapable of speech, and he has at all times been completely dependent upon his parents for his support and well-being. Joseph was enrolled in the IBM Plan from the date of his birth until December 31, 1997. Beginning on January 1, 1998, Joseph was enrolled in the employee benefit plan offered through his father's employer.

In late 2005, Huss made a phone call to the IBM Plan Customer Service Center. Huss spoke to a Customer Service Specialist ("CSS"), explained the details of Joseph's disabled and dependent status, and asked what steps were required to enroll Joseph in the Plan. The CSS told Huss there would be no problem enrolling Joseph in the Plan and suggested that Huss call again about six months prior to her retirement.

On January 16, 2006, Huss spoke with a different CSS who confirmed that any of her dependents listed as "contacts" in the Plan's system "could be added to her retiree benefit coverage." At the time, Huss had no contacts listed in the system.

On June 15, 2006, Huss called and spoke with another CSS and added Joseph as a contact on her benefits record. She again explained Joseph's status as a permanently disabled dependent and asked what she needed to do to ensure Joseph's enrollment in the Plan in the following annual open enrollment period. The CSS placed Huss on hold to verify if anything else needed to be done regarding adding dependents and then confirmed what the previous IBM Plan employee had told Huss – that there was nothing for her to do until she was ready to add Joseph to the Plan.

On January 3, 2007 (just after Huss's retirement on December 31, 2006), another CSS, Todd Rogers, called Huss to confirm her pension and benefit elections. Rogers confirmed that Joseph was listed as a "contact," but he told Huss that the Plan would not permit Joseph to enroll because she was supposed to have submitted a written application at least 60 days prior to Joseph's

attained age 23 – on or before June 9, 2004 – and that her failure to do so barred Joseph's enrollment in the Plan.

On January 5, 2007, Rogers called Huss again and confirmed that Joseph would not be permitted to enroll in the IBM Plan. When Huss told Rogers that a previous Plan employee had added Joseph as a "contact" and had told Huss she could enroll Joseph during the next open enrollment period, Rogers stated that although Joseph had been added as a "contact," a "special indicator for dependent" status in the IBM system had not been checked. Rogers advised Huss that the Plan had not received a written application within 60 days of Joseph's 23rd birthday. Rogers also indicated that the Plan had no reason to send a notification of the application requirement to Huss prior to Joseph's attaining age 23. However, if Joseph had been enrolled in the Plan when he was about to reach the age of 23, IBM would have sent a notification to Huss regarding the application requirement.

On January 8, 2007, Huss sent an email to Rogers requesting a copy of "the IBM summary plan," "the policy language for this benefit," and "[a]ny notices or instructions that may have been sent out on this benefit." Rogers responded the same day by saying there were no further documents other than the January 1, 2006 version of the Summary Plan Description ("SPD") that had already been sent to Huss.

On January 9, 2007, Rogers again spoke with Huss, confirmed he received her email request for documents, and explained that he would verify whether she needed any additional information beyond the January 1, 2006 SPD. On January 16, 2007, Rogers contacted Huss and advised that the January 1, 2006 SPD was the only document she needed for her appeal. Rogers sent Huss an email on January 17, 2007 confirming: "I have done some research with our back

4

office to see if there is any additional documentation that you might have received or need to research your appeal. Our back office has informed me that there are no other mailing [sic] that we would have sent out to you. Also, their [sic] are no additional resources that you should need. The only document that we would send or that you should need is the [January 1, 2006 version of the] Summary Plan Document. I requested this document on 1/9/07."

On January 23, 2007, Huss emailed Rogers to confirm that she received the January 1, 2006 SPD. In her email, Huss also specifically requested the Plan language in effect in 2004, as "this is the date you advised that I would have had to notify IBM that my son is a dependent." In an email dated January 29, 2007, Rogers responded to Huss, "[u]nfortunately, there is no policy or contract information for us to send. Everything you should need to file your appeal would be included in the Summary Plan Description booklet you received."

On March 27, 2007, Huss's counsel sent an appeal letter to the Plan requesting the Plan Administrator to review the "determination concerning the eligibility of Joseph Robert Huss, Jr. to receive health insurance benefits as a dependent under the IBM Medical and Dental Plan." The appeal letter noted Huss's prior requests for all operative plan language, including the plan language from 2004, and made a new request for the following documents: "actual plan documents for IBM Medical and Dental Plan effective January 1, 2004, 2005, 2006 and 2007, as well as the Summary Plan Descriptions for 2004, 2005 and 2007."

By letter dated April 26, 2007, Defendants denied Huss's request to enroll Joseph in the Plan. The denial letter quoted a passage from the "Who is Eligible" section of the January 1, 2006 version of the SPD[1]:

---

[1] This denial letter itself (as well as the second one sent in August, 2008) does not specify to which version of the SPD it refers. However, Defendants admitted in their response to Huss's

5

> Your mentally or physically disabled child who was covered under the Plans immediately before reaching age 23 and who, but for having reached age 23 would still be eligible, will be eligible to enroll or remain enrolled upon attainment of age 23, and thereafter to remain continuously eligible beyond the age of 23 if, at the time the child turns age 23, IBM determines, on the basis of the child's condition at the time, that (1) he or she is mentally or physically disabled, and (2) because of such mental or physical disability he or she incapable of self-support, and (3) he or she is unmarried, and (4) he or she is primarily dependent upon you, the employee, for maintenance and support. (SSI or SSDI income may be used in determining whether your child is principally dependent upon you.)
>
> If you think your child will meet the above criteria at age 23, you must request continuation of IBM health benefits by completing the "Over Age 23 Disabled Child Application" and submitting it to the IBM Employee Services Center at least 60 days before his or her 23rd birthday. Applications are available by calling the IBM Employee Services Center.

According to the denial letter, "In order to enroll Joseph in IBM benefit coverage the **Over Age 23 Disabled Child Application** had to be submitted to the IBM Employee Services Centers no less than 60 days prior to Joseph reaching age 23." Because Huss failed to submit such an application, Joseph was precluded from enrolling in the Plan. The letter also noted that the application requirement applied "regardless of whether the child is enrolled in IBM benefit coverage at the time the child reaches age 23."

The April 26, 2007 denial letter included enclosures of one of the three 2003 versions of the SPD, one of the four 2004 versions, one of the three 2005 versions, and the Summary Annual Reports ("SAR") for 2004 and 2005. The most recent SPD the Plan had published prior to Joseph's attaining age 23 was not enclosed. The letter explained that the 2007 SPD and 2006 SAR were not yet available.

---

Local Rule 56.1 statement of facts that the SPD quoted and relied upon by the IBM Plan in its denial of the claim is the January 1, 2006 SPD.

On June 12, 2007, Huss's counsel submitted her final appeal of the Plan's denial of Joseph's enrollment. The appeal noted that Huss was relying on the August 5, 2003 version of the SPD, the version which was in effect 60 days prior to Joseph's 23rd birthday. The appeal also requested copies of the following documents:

All documents reflecting contact with the IBM Employee Services Center;

Drafting History for 2005 SPD Revisions, including all documents reflecting the decision to modify the SPD to move the annual enrollment option language from § 2.3 to § 3.1.1.4 and all documents reflecting communications, memos, drafts and emails concerning this modification of the SPD;

- Other Plan Documents/Insurance Policies, including documents that reflect the terms and conditions of the actual plan, editions of the SPD published from January 1, 2003 to the present, and any and all documents, internal memos, interpretation notes, or other written materials that reflect or discuss in any fashion the eligibility and enrollment requirements for the IBM Plan in general, and for the age 23 and older mentally disabled dependent benefits in particular;

- Other Affirmations of Continued Eligibility, including documents reflecting other instances similar to the August 2006 conversation in which IBM Plan employees/representatives confirmed that eligibility continues beyond age 23, and is not subject to a 60-day window application;

- Documents reflecting the complete record of any contacts and communications between Eileen and IBM concerning eligibility, enrollment and receipt of benefits under the IBM Plan; and

- History of Joseph's enrollment in the IBM Plan from the beginning of Eileen's employment to the present.

On June 28, 2007, Barnes reminded a subordinate to listen to the recordings of the phone calls between Huss and the CSSs. That plan representative summarized the June 15, 2006 call, including the CSS's statement to Huss that "whenever she wanted to add [Joseph] to coverage, she could. The CSS associate advised the participant there was nothing more to do at that time until

7

she wanted to add him to coverage." In response to this summary Barnes wrote, "let's deny this appeal," concluding that the SPD "clearly indicates" that the participant must "request continuation of coverage" at least 60 days prior to attaining age 23.

On August 8, 2007, Barnes sent a signed letter to Huss's counsel stating that she had "conducted a final review of [Huss'] appeal." Relying again on the January 1, 2006 version of the SPD, Barnes wrote that "IBM's Plan clearly indicates that an employee **MUST** request continuation of coverage at least 60 days prior to the child becoming 23." In addition, she wrote that "to request continuation of coverage at the 23rd birthday, the child must first have been enrolled in coverage during the prior open enrollment period." Because IBM only had records indicating that Huss called to enroll Joseph on June 15, 2005, when Joseph was already 25 years old, Joseph was ineligible for coverage when the request was made. Barnes further explained that in the event of any conflict between the terms of the Plans and the information provided by customer service representatives, "Plan documents, insurance policies, IBM's corrected records, other controlling documents or the applicable law will control."

Following the administrative appeal process, Huss learned that the SPD language in effect on June 9, 2004 required only a phone call, rather than the submission of a written application:

> If you think your child will meet the above criteria at age 23, you must request continuation of IBM health benefits at least 60 days before his or her 23 birthday. To do so, call the IBM Employee Services Center. If you are a newly hired employee with a disabled child who has already reached 23 at the time your employment begins, you should call to request this coverage within 60 days of your date of hire.

Although Huss cannot recall a specific conversation, Huss testified that it is highly probable that she discussed and expressed her interest in Joseph's continued eligibility for benefits as a disabled

8

adult at least once, and probably on multiple occasions because of the critical nature of the coverage, prior to June 9, 2004. The Plan has not retained any phone records of Huss's conversations with the IBM Plan Customer Service Center prior to June 9, 2004. Defendants admit that nothing in the administrative record suggests that any IBM Plan representative, including Barnes, ever checked to see if Huss contacted the Plan about Joseph's continued eligibility for benefits prior to June 8, 2004.

## II. Standard of Review

### A. Summary Judgment

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits" indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). With cross-motions, I construe all inferences in favor of the party against whom the motion under consideration is made. *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (citation and quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Review of Benefits Regulated by ERISA

As mentioned above, the Plan gave Barnes the authority to determine eligibility for benefits and to construe provisions of the Plan. Consequently, Barnes' interpretation may be reversed only if it was arbitrary and capricious. *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000). A decision is arbitrary or capricious "only when the decisionmaker has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for a decision that runs counter to the evidence . . ., or is so implausible that it could not be ascribed to difference in view or the product of . . . expertise." *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996) (quotation and citation omitted). I may not interfere with the Barnes' decision unless she not only made the wrong call, but made a "downright unreasonable" one. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990). A denial of benefits will not be set aside if it was based upon a reasonable interpretation of plan documents. *James*, 230 F.3d at 317. It does not matter whether the result reached by the administrator is one I would have arrived at in the first instance. *Id*. (citation omitted). Nevertheless, this deferential review "is not no review," and "deference need not be abject." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

In addition, the conflict of interest resulting from IBM's dual role of funding the Plan and deciding claims under the Plan "must be considered as a factor" in determining whether Barnes abused her discretion as the plan's administrator. *See Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008). The conflict of interest presented here does not alter the arbitrary and capricious standard that I must apply, it simply presents one of many factors that might help demonstrate an abuse of discretion. *See Gutta v. Standard Select Trust Ins. Plans*, 285 Fed. Appx. 302 (7th Cir. 2008).

**III. Discussion**

As a preliminary matter, Defendants argue that under the abuse of discretion standard, my review of Huss's claim is limited to the information available to, and considered by, Defendants at the time of the denial. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999) ("Deferential review of an administrative decision means review on the administrative record.") I implicitly rejected this contention earlier in this

case when I ordered IBM to respond to focused discovery that had been propounded by Huss. "Where a claimant makes specific factual allegations of misconduct or bias in a plan administrator's review procedures, limited discovery is appropriate." *Semien v. Life Ins. Co. of North America*, 436 F.3d 805 (7th Cir. 2006). Huss identified a specific conflict of interest between the IBM Plan and IBM's own plan administrator and further made a showing that there was good cause to believe limited discovery would reveal a procedural defect in the plan administrator's determination. Huss requested and was refused earlier versions of the SPD during her administrative appeal process. Defendants' letters denying Huss's appeals quoted language from an SPD without citing to which version it was quoting.

A key component of the *Perlman* decision is the line, "when there can be no doubt the application was given a genuine evaluation," because only then is judicial review "limited to the evidence that was submitted in support of the application for benefits." 195 F.3d at 982. Where, as here, there is doubt that Huss's appeals were given genuine evaluation (Defendants did not supply Huss with earlier versions of the SPD and did not cite to earlier versions of the SPD in their denial letters), then it was appropriate for me to allow Huss to conduct limited discovery to determine what policies, procedures, and practices do exist and, if so, to what extent they interfered with a fair review of Huss's claim. *See Semien*, 436 F.3d at 815. This information remains relevant to my discretionary review of the plan administrator's decision to deny enrollment. *Id.*

Presumably Defendants seek to limit my review to the administrative record because that record, as attached to Defendants' motion, only includes the version of the SPD that became effective on January 1, 2006. Defendants contend that this version of the SPD is the operative plan document because it was the Plan document in effect in January, 2007 when benefits for Joseph were denied. In support, Defendants cite to *Hackett v. Xerox Corp. Long-Term Disability Income*

11

*Plan*, 315 F.3d 771, 774 (7th Cir. 2003). Huss argues that the appropriate Plan document is the version of the SPD that was in effect at the time Joseph turned 23 (*i.e.*, the August 5, 2003 SPD). The resolution of this dispute over the so-called "operative plan" establishes the basis for nearly all of my findings in this opinion.

Defendants' reliance on *Hackett v. Xerox* is misplaced. In *Hackett*, the plan participant disputed the Plan's decision to terminate his disability benefits. *Hackett* merely held that the SPD in effect at the time a participant's benefits claim accrues will govern the claim. 315 F.3d at 774 ("absent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied"). But our case is not one over a rejected claim for health benefits. Our case concerns Defendants' adverse determination regarding Joseph's eligibility to enroll in the Plan on the basis that Huss failed to secure his continued eligibility in June of 2004. The dispute is whether, on or before June 9, 2004, Huss failed to satisfy a purported condition precedent for Joseph's continued eligibility to annually enroll in the Plan. *Hackett* does not address this issue and its unremarkable holding is not applicable to the question presented here.

The nature of the dispute dictates whether the plan administrator must turn to an earlier version of an SPD. *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 585 (7th Cir. 2005) (applying older version of plan that was in effect at the time plaintiff took his break in service in evaluating effect of break on eligibility service); *see also Cortes v. Midway Games, Inc.*, No. 04 C 5268, 2004 WL 2367738, at *4 (N.D. Ill. Oct. 15, 2004); *First Midwest Bancorp, Inc.. v. Hickey*, No. 93 C 6784, 1994 WL 532187, at *2 (N.D. Ill. Sept. 26, 1994); *Brewer v. Protexall, Inc.*, No. 91-2222, 1992 WL 698272, at *2 (C.D. Ill. June 25, 1992) (each concluding that earlier versions of a benefits plan controlled the rights of the parties).

Here, it is clear that the language of the SPD in effect when Huss purportedly failed to preserve Joseph's continued eligibility is germane to a discretionary review of the plan administrator's decision to deny Joseph's enrollment. That this version of the SPD was not explicitly relied on by the plan administrator in making her determinations to deny Joseph's enrollment does not preclude my consideration of it here. Defendants had access to the August 5, 2003 SPD language at the time of each denial of enrollment, as well as the language of each and every version of the SPD thereafter. The applicable SPD is always to be deemed part of the administrative record.

IBM does not dispute that Joseph satisfies the four specified eligibility criteria for receiving the disabled adult dependent benefits. Joseph was refused enrollment only because of Huss's failure to submit a written application to IBM 60 days prior to Joseph's 23rd birthday. It is undisputed that Joseph turned 23 on August 8, 2004. According to IBM, Huss was required to submit a written application on or before June 9, 2004 – the date 60 days prior to Joseph's 23rd birthday. Huss maintains she was not required to do so.

Whether or not Huss was required to submit the application on or before June 9, 2004 in order to preserve Joseph's eligibility in the Plan depends on the language of the SPD in effect on June 9, 2004. This was the August 5, 2003 version of the SPD, which simply does not include any requirement that Huss submit a written application for the disabled adult dependent benefits available under the Plan. The August 5, 2003 SPD reads, in applicable part: "If you think your child will meet the above criteria at age 23, you <u>must</u> request continuation of IBM health benefits at least 60 days before his or her 23 birthday. *To do so, call the IBM Employee Services Center.*"[2]

---

[2] The requirement for a written application was first introduced by IBM in the SPD published on June 30, 2005. IBM has never argued that Huss failed to make such a phone call. Rather, IBM claims that it does not have any records of phone conversations to its CSSs in or

13

IBM, therefore, based its entire claim decision on Huss's failure to comply with a requirement by June 9, 2004 that clearly did not exist in 2004.

IBM's contention that the language relating to the "Age 23 Disabled Dependent Adult" provision in the 2004 and 2007 versions of the SPD are "substantially the same" with the exception that "the SPD in effect in 2007 contains the application requirement" is without merit. The contention defies simple common sense. The very exception that Defendants acknowledge establishes a material difference between the 2004 and 2007 versions of the SPD; indeed it was the additional application requirement that formed the sole basis for IBM to deny both of Huss's administrative appeals. Defendants cannot exclude Joseph from the Plan for failing to comply with a requirement that did not exist.

Even if Defendants were permitted to invoke the application requirement in § 3.1.1.4 of the 2007 version of the SPD, their interpretation of the Plan language cannot be sustained. There is a difference between (1) *eligibility* for benefits, (2) *enrollment* in the Plan, and (3) the actual *receipt* of benefits. The IBM Plan expressly recognizes the distinction: "All *eligible* employees, surviving spouses/domestic partners, and dependents must be *enrolled* in order to *receive* IBM medical, dental, and vision *benefits*." § 2.1. The plain language of the application requirement makes clear that it applies only to currently enrolled beneficiaries who seek a "continuation of IBM health benefits."[3] Therefore, it only applies to 22-year olds who are currently receiving benefits. Joseph,

---

before 2004.

[3] The relevant paragraph reads in whole:

> If you think your child will meet the above criteria at age 23, you must request continuation of IBM health benefits by completing the "Over Age 23 Disabled Child Application" and submitting it to the IBM Employee Services Center at least 60 days before his or her 23rd birthday. Applications are available by calling the IBM Employee Services Center.

14

who was not currently receiving benefits in 2004, could not apply for the "continuation" of such benefits. There is no corresponding requirement for continued eligibility for enrollment in the IBM Plan.

Defendants insist that "it is clear from the Plan language, that, to ensure Joseph remained eligible for coverage under the Plan, Huss was required to take action prior to Joseph's 23rd birthday" and "for Joseph to be eligible for coverage, Huss needed to submit" a written application. IBM's first decision letter concludes that the SPD requires the submission of such an application "regardless of whether the child is enrolled in IBM benefit coverage at the time the child reaches 23." This assertion is not supported by the actual Plan language, which expressly only requires the submission for a continuation of "benefits" and not for the continuation of "eligibility." IBM's insertion of the word "eligibility" where it does not exist controverts the plain meaning of the Plan and renders the administrative decision arbitrary and capricious. *Filipowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807, 813 (7th Cir. 1995) (fiduciaries or administrators who ignore the plain language of the plan act arbitrarily and capriciously); *Swaback v. American Info. Tech. Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) (same).

Not only is IBM's conclusion contrary to the plain language of the written application requirement, it also contradicts the Plan's unambiguous promise that Huss would be given a chance to enroll Joseph in the Plan each and every year: "Each year, during an enrollment period usually held in the fall, you will have the opportunity to elect coverage for yourself and any other eligible family members you with to enroll for the upcoming plan year." § 2.1. This language is repeated a couple of paragraphs later in § 2.3. The express promise is again repeated in the section containing the written application requirement: Huss "may opt out or waive coverage for [Joseph] one year

15

and re-enroll [Joseph] during the next year or subsequent annual enrollment period as long as [Joseph] continue[s] to meet the eligibility criteria." § 3.1.1.4. In fact, on December 20, 2005, IBM amended the Plan for the purpose of adding the "annual enrollment" language directly into section 3.1.1.4, the same section that addresses Joseph's right to enroll in the benefits program for mentally disabled dependents. Accordingly, IBM's argument that Huss had a one-time opportunity in 2004 to enroll Joseph in the plan directly contradicts the Plan's express provisions that Huss has an annual opportunity to do so.[4]

In some cases, the plain language or structure of the plan or simple common sense will require me to pronounce an administrator's determination arbitrary and capricious. *See Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). In this case, both the plain language of the Plan and simple common sense cause me to find that the administrator abused her discretion when she upheld the decision declining to enroll Joseph in the IBM Plan. Accordingly, I

---

[4] Since I find the SPD unambiguous, I do not consider the extrinsic evidence, though I did examine it to see if it offers support to Defendants. I did so on the premise that plan administrators are entitled to considerable deference. The extrinsic evidence, however, supports Huss's interpretation that the written application requirement only applies to dependents who are already receiving benefits under the Plan and not to dependents, like Joseph, who are seeking to enroll in the Plan: (1) the practical interpretation of the parties reveals that multiple IBM CSSs trained and entrusted with the responsibility of interpreting the SPD and explaining its terms concluded that the application requirement did not apply to Joseph's continued eligibility for enrollment; (2) IBM's form application confirms that the requirement only applies to dependents already enrolled in the plan because it reads: "If your request for continuation of coverage is approved, your child will remain enrolled in their current coverage." And, alternatively, "If your request for continuation of coverage is denied, you will be notified . . . how you can purchase continuation coverage"; (3) IBM sends out letters to participants with 22-year old dependents reminding them to submit their applications at least 60 days before their dependents turn 23 – but it only sends those letters to participants whose dependents are currently enrolled in the Plan. Because this evidence is of no value to Defendants, I disregard it.

grant summary judgment for Plaintiff on her claim for relief for benefits and find that Joseph R. Huss, Jr. is entitled to be enrolled in the IBM Plan immediately. [5]

Turning to Huss's claim for statutory penalties, I previously ruled that prior versions of the summary plan descriptions requested by a plan participant fall within the scope of the penalty provisions of 29 U.S.C. §§ 1132(c) and 1024(b)(4) if they are material to an evaluation of the claimant's rights. *See Ames v. American Nat'l*, 170 F.3d 751, 759 (7th Cir. 1999). Subsection 1024(b)(4) requires disclosure of "other instruments under which the plan is established or operated." In determining whether the documents Huss requested were subject to disclosure, I must consider whether those documents allow the individual participant to know exactly where she stands with respect to the plan – what benefits she may be entitled to, what circumstances may preclude her from obtaining benefits, what procedures she must follow to obtain benefits, and who are the persons to whom the management and investment of the plan funds have been entrusted. *Hess v. Hartfortd Life and Acc. Ins. Co.*, 91 F.Supp.2d 1215, 1226 (7th Cir. 2000) (quotation and citation omitted). With this framework in mind, common sense confirms that if an earlier version of an SPD is germane to evaluating a claimant's rights, section 1024(b)(4) encompasses those earlier SPDs.

Huss's statutory penalty claim is premised upon her requests for (1) the SPDs in effect on June 9, 2004, and (2) the intervening amendments to the SPD published up until the version relied upon by IBM. IBM affirmatively misrepresented to Huss that 2004 versions of the SPD were not available to send. After Huss finally obtained the 2004 through 2006 SPDs, she learned that (1)

---

[5] I need not and do not reach Huss's argument that a failure to timely comply with an application requirement for the receipt benefits does not permanently destroy eligibility for benefits (premised upon *Dudek v. Midwest Operating Eng. Pension Trust Fund*, No. 02 C 1079, 2003 WL 22757746 (N.D. Ill Nov. 20, 2003), nor do I reach her estoppel argument based upon the Court of Appeals' decision in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 583-86 (7th Cir. 2000).

IBM was invoking a written application requirement that did not exist at the time Joseph turned 23 and (2) IBM had amended the SPD between 2004 and 2006. These documents were critically important documents in evaluating Huss's rights. Accordingly, IBM's failure to timely turn over those documents – in conjunction with statements to Huss that the documents either did not exist or were not necessary for her appeal – give rise to the invocation of statutory penalties. *See Ames*, 170 F.3d at 760 (Court emphasized that fines may be necessary to make employers take seriously their disclosure obligations when an actual lack of information results from the employer's reluctance to respond to a request for information).

Huss's motion for summary judgment on her claim for statutory penalties is granted. I instruct the parties to simultaneously submit briefs of no longer than 5 pages on the appropriate amount of penalty I ought to impose. Those briefs will be due within two weeks of the date this memorandum opinion and order is issued.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: March 20, 2009