**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EILEEN M. HUSS, individually and as Guardian for JOSEPH R. HUSS, JR., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07 C 7028 Judge James B. Zagel |
| IBM MEDICAL AND DENTAL PLAN and R.A. BARNES in her capacity as Plan Administrator, | ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT**
**AND INCORPORATED BRIEF IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants IBM Medical and Dental Plan (the "Plan") and R.A. Barnes, in her capacity as Plan Administrator ("Barnes") (hereinafter, collectively "Defendants"), by their undersigned counsel, and pursuant to Fed. R.Civ. P. 56 submit this memorandum in support of their Motion for Summary Judgment and incorporated Response to Plaintiff Eileen Huss's ("Huss") Motion for Summary Judgment.

**I.    INTRODUCTION**[1]

Huss brought this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*  (*See* Doc. No. 23.)  In her Amended Complaint, Huss seeks relief from the IBM Medical and Dental Plan ("the Plan") in the form of health benefits allegedly due to her

---

[1] Citations in this memorandum appear as follows:  (1) Defendants' Statement of Undisputed Material Facts appear hereinafter as "Def. SMF, ¶ __"; (2) pleadings and orders are referenced by the electronic docket number as "Doc. No. __"; and (3) Plaintiff's Memorandum in Support of Summary Judgment appear hereinafter as "Pl. MSJ at __."

son, Joseph Huss, Jr. ("Joseph"), pursuant to 29 U.S.C. § 1132(a)(1)(B).[2]  (*See id.*)  Specifically, Huss alleges the Plan incorrectly interpreted the eligibility requirements of the Over Age 23 Disabled Dependent Child provision as set forth in the Plan and the decision to deny Joseph's enrollment in the Plan was arbitrary, capricious and unreasonable.  (*See id.*)  Defendants based their 2007 denial of Huss's claim on the Plan language from the 2006 SPD, the Plan in place at the time Huss filed her claim.  (*See* Doc. No. 39, 40.)

On December 18, 2008, the parties filed cross-motions for summary judgment.  (*See* Doc. Nos. 39, 40, 41, 44, 45, 46.)  On March 20, 2009, the District Court issued a Memorandum Opinion and Order denying Defendants' motion for summary judgment and granting Plaintiff's motion for summary judgment. (*See* Doc. No. 76.)  In its Memorandum Opinion and Order, the District Court concluded Defendants' decision to deny Joseph enrollment on the Plan was arbitrary and capricious.  (*See id.*)  Defendants' appealed this Court's prior ruling on summary judgment to the United States Court of Appeals for the Seventh Circuit. (*See* Doc. No. 96.)

On April 13, 2011, the Seventh Circuit reversed this Court's ruling on summary judgment and held, in pertinent part, if a plan participant's application for benefits is denied for her failure to fulfill a condition precedent to her eligibility for benefits, the operative plan language is the language that was in effect at the time the opportunity to fulfill the condition precedent expired.  *See Huss v. IBM Medical and Dental Plan and R.A. Barnes*, 2011 U.S. App. LEXIS 7563, *12-13 (7th Cir. Apr. 13, 2011). The Seventh Circuit remanded the claim back to the Plan with direction to determine, under the 2003 SPD, if Huss, as the plan participant, took action within 60 days of Joseph's 23rd birthday to secure continued eligibility for enrollment

---

[2] Plaintiff also raised other claims in her Amended Complaint that were addressed by this Court in its Opinion and Order entered on March 20, 2009 and the Seventh Circuit in its Opinion and Order on April 13, 2011.  These claims are not the basis of the pending motions for summary judgment.

beyond Joseph's age of 23. *See id.* at 22-23. The Seventh Circuit also evaluated the 2003 SPD language challenged by Huss and held that the Plan is reasonably construed to require an employee to "take action within sixty days of a disabled adult dependent's 23rd birthday to secure continued eligibility for enrollment beyond the age of twenty-three." *Huss*, 2011 U.S. App 7563, *17-19.

By letter dated November 3, 2011, after a new analysis of Huss's appeal requesting coverage for her son, Joseph as an eligible dependent under the Plan, Defendants denied Huss's request to enroll Joseph in the Plan. (Def. SMF, ¶¶ 23-28.) The Plan Administrator provided three reasons for denying Huss's request to enroll Joseph in the Plan: (1) Joseph was not enrolled in the Plan on his 23rd birthday as required by the 2003 SPD; (2) there was no indication in the administrative record prior to Joseph's 23rd birthday that Huss inquired about continuous coverage for Joseph past his 23rd birthday; and (3) Huss was not enrolled in the Plan on Joseph's 23rd birthday and therefore Joseph could not have been enrolled under the 2003 SPD. (*See id.*) The parties are now filing cross-motions for summary judgment based on the Plan Administrator's November 3, 2011 determination to deny Huss enrollment of her son in the Plan.

## II.   BACKGROUND AND BASIS FOR SUMMARY JUDGMENT

### A.   HUSS'S EMPLOYMENT WITH IBM AND COVERAGE UNDER THE IBM PLAN

Huss worked for International Business Machines Corp. ("IBM") for approximately 30 years, beginning in 1976. (Def. SMF, ¶ 1.) During part of her employment, Huss had coverage under the IBM medical, including dental and vision, plans for herself and her dependents, her husband and son, Joseph, from 1976 through 1997. (*See id.*, ¶ 5.) Huss and her dependents were not covered under the IBM medical plans, including dental and vision from 1998 through 2004. (*See id.*) According to Huss, her family changed coverage to her husband's plan in 1998 because

3

the rates were better. (*See id.*, ¶ 19.) From January 1, 2005 to the present, Huss has coverage under the IBM medical plans, including dental and vision, for herself only, with the exception of 2009 when she also covered her husband under the IBM dental plan. (*See id.*, ¶ 6.)

**B.  HUSS'S PRE-RETIREMENT COMMUNICATION WITH THE ESC**

Huss retired from her employment with IBM on December 31, 2006. (*See id.*, ¶ 1.) Prior to her retirement from IBM, on or about January 1, 2006, Huss contacted IBM's Employee Services Center ("ESC") to obtain information about her retirement, the benefits available to her upon her retirement, the timing for her to make elections about benefits, and the ability to add dependents to her coverage (*See id.*, ¶ 12.) During the initial call, Huss raised questions about adding dependents to her coverage and enrolling her husband and son in the Plan. (*See id.*) The ESC Customer Service Specialist ("CSS associate") advised Huss she did not have any dependents listed on her record and recommended she add the dependents as soon as possible if she wanted to add them to the Plan at a later date. (*See id.*)

Huss waited until June 15, 2006 to add her spouse and son as contacts on her benefits. (*See id.*, ¶ 13.) During that call, Huss advised the CSS associate that her son, Joseph, was 25 years old and has special needs. (*See id.*) Huss advised she was not ready to add Joseph to the Plan but wanted to know what she would need to do to add her dependent to the Plan at a later date. (*See id.*) The CSS associate put Huss on hold to verify if anything else needed to be done regarding adding dependents and advised there was nothing for her to do until she was ready to add Joseph to the Plan. (*See id.*)

Approximately five months later, November 16, 2006, Huss contacted the ESC with questions about her monthly fee if she added her husband to the Plan. (*See id.*, ¶ 14.) During this conversation, Huss wanted to confirm that the dependent she wanted to add to the Plan was

4

her husband and not her son because both gentlemen are named Joe. (*See id.*) Huss did not mention anything about coverage for her son, Joseph, during this conversation. (*See id.*)

### C. HUSS'S CONVERSATIONS ABOUT RETIREMENT AND JOSEPH'S STATUS UNDER THE PLAN

After her retirement, on January 3, 2007, a CSS associate contacted Huss to confirm her pension and benefit elections. (*See id.*, ¶ 15.) During this conversation, Huss inquired about the status of her son Joseph being listed as a contact because she had received a benefit document in the mail that only listed Joseph, her husband, as a dependent. (*See id.*) Huss explained she had called "months ago when she was thinking of retiring," which was actually approximately three to six months prior, and had gone over adding her son as a contact because he is a disabled dependent, and was told he was listed on her contacts. (*See id.*, ¶¶ 15-16.) She reiterated that she had previously advised that she "did not want to put him on the plan right now" but she did want them listed as contacts in the event she wanted to put them on the Plan in the future. (*See id.*)

After receiving confirmation that Joseph was in fact listed as a contact in her computerized record, she continued to question why he was not listed as a dependent on the documents she received after her retirement. (*See id.*, ¶ 16.) The CSS associate explained Joseph was 25 years old but he would check with the dependent eligibility group and get back to her by January 5, 2007. (*See id.*) During the January 5, 2007 conversation, Huss learned she needed to have taken action at least 60 days prior to August 8, 2004, Joseph's 23rd birthday, to continue her son as an eligible, disabled dependent adult and, she had failed to do so. (*See id.*, ¶ 17.)

In response to receiving this information, Huss responded that she had not been advised of the requirement when she called six months ago but "though that probably wouldn't have

made much difference" because they had coverage under her husband's plan. (*See id.*, ¶ 18.) The CSS associated responded by advising the Plan was focused on when he aged off from potential eligibility under the Plan at age 23, not six months ago and inquired if Huss remembered what happened two years ago, acknowledging "that's a kind of stretch." (*See id.*) According to Huss, the issue did not come up about Joseph's eligibility beyond age 23 because "he's been under my husband. Well, their rates were better so I'm sure that's why it has not come up." (*See id.*, ¶ 19.) Huss further admitted that the first time she became aware that dependents were not eligible unless they were listed as disabled beyond age 23 was when she called to get some information on her retirement and wanted to make sure Joseph was listed in the system. (*See id.*, ¶ 20.) Huss pinpointed this conversation as having occurred within the last year, probably six or eight months earlier (i.e., in 2006). (*See id.*) The CSS associate explained to Huss her appeal rights and further advised that had Joseph been on Huss's insurance in the first place when he was age 23 and aging off from eligibility under the Plan, Huss would have been notified. (*See id.*, ¶ 21.)

> The fact that he was not on the coverage and, you know, there was no real—there was no real need to get in touch with you, and ***because we had no indication he was disabled,*** we had no indication to proactively speak to you about it...

(*See id.*) (emphasis added)

On January 8, 2007, a CSS associate called Huss to follow-up with her about her issue with her disabled son's eligibility. (*See id.*, ¶ 22.) During this conversation, the CSS associate advised Huss that he spoke with the disability group and was informed "... that notification is sent out regarding dependents losing eligibility if the dependent is enrolled in the coverage." (*See id.*) The CSS associate went on to advise "...that kind of confirms exactly what we were thinking about why nothing was announced since he wasn't covered in '04, okay?" (*See id.*) The

CSS associate directed Huss to the SPD for additional information regarding eligibility and enrollment. (*See id.*)

### D.   INFORMATION SUBMITTED ON REMAND TO BARNES

The Seventh Circuit ordered a remand of the matter to the Plan in order for the Plan Administrator to evaluate Huss's claim based on the language of the 2003 SPD. *See id.* The 2003 SPD provides:

> If you think your child will meet the above criteria at age 23, you <u>must</u> request continuation of IBM health benefits at least 60 days before his or her 23 birthday. To do so, call the IBM Employee Service Center. If you are a newly hired employee with a disabled child who has already reached age 23 at the time your employment begins, you should call to request this coverage within 60 days of your date of hire.

(Def. SMF, ¶ 9.) The Seventh Circuit held that this provision "required the participant to call the Customer Service Center to make the request." *See id.* at 16-20. The Seventh Circuit stated that the question for the Plan Administrator to consider on remand is "whether Huss took sufficient action before June 9, 2004, to ensure Joseph's continued eligibility for enrollment." *See id.* at 22-23.

In accordance with the Seventh Circuit's order, the Plan Administrator conducted a new analysis of Huss's appeal requesting coverage for her son, Joseph, as a dependent under the terms of the 2003 SPD. (Def. SMF, ¶ 24.) In addition to the information from the existing administrative record, the Plan Administrator was provided with the following supplemental information for her to evaluate in connection with her new review in accordance with the remand order from the Seventh Circuit: (1) the 2003 SPD; (2) the Seventh Circuit opinion; (3) affidavit of Manuel DeSilva, IBM/Fidelity Relationship Manager; (4) a DVD containing audio of the calls between Huss and the ESC; (5) a condensed transcript of calls on DVD between Huss and the

ESC; (6) Huss's personnel file; and (7) Huss's supplemental affidavit dated October 15, 2011. (*See id.*, ¶¶ 24-25.)

Mr. DeSilva's affidavit contained a list of calls between ESC and Huss ranging from October 26, 2004 through March 19, 2010. (A.R. D2899-D2903.) The records retention policy is seven years for calls with the ESC. Accordingly, as discussed in more detail below, there is no call included prior to October 26, 2004, seven years before the decision on remand on November 3, 2011. (*See id.*) Huss admits she did not have coverage through the IBM Plan from January 1, 1998 through December 31, 2004 because her husband's benefits were less expensive, and the transcript of the calls confirms Huss had not obtained benefits through IBM prior to the 2005 Plan year. (Def. SMF, ¶¶ 5, 6, 19.)

In her supplemental affidavit dated October 15, 2011, Huss states she recalled contacting the Plan in January or February 2003 to discuss Joseph's eligibility. (A.R. D3062-D3066.) Huss further testified that she believed this conversation occurred during that time period because she has a letter from her husband's health benefit plan dated February 13, 2003 in which that plan approved continued coverage for Joseph through the life of her husband's policy. (A.R. D3066.) The statements in Huss's affidavit are contradicted by Huss's communication with the ESC in 2006 and 2007.

According to the call transcripts reviewed by the Plan Administrator, Huss's first inquiry regarding Joseph's eligibility for enrollment on the Plan occurred around the time Huss contacted the ESC about her retirement benefits, approximately January 2006. (Def. SMF, ¶¶ 12-21.) There was no indication that any discussion or inquiry regarding Joseph's eligibility occurred any time prior to that discussion, except when Huss moved Joseph to her husband's plan in 1998. (*See id.* 12-21.)

8

### E. ON REMAND, HUSS'S CLAIM TO ENROLL JOSEPH IN THE PLAN IS DENIED

After the Seventh Circuit remanded the claim back to the Plan Administrator to consider the claim under the 2003 SPD rather than the 2006 SPD, the Plan Administrator conducted a new analysis of Huss's appeal requesting coverage for her son, Joseph as an eligible dependent under the terms of the 2003 SPD. (*See id.*, ¶ 24.) After a review of the administrative record, including Huss's supplemental affidavit dated October 15, 2011, in which Huss testified that she recalled contacting the Plan in January or February 2003 to discuss Joseph's eligibility, the Plan Administrator concluded Huss did not request enrollment for Joseph into the Plan as required by the 2003 SPD to enroll her son Joseph for continued coverage past his 23rd birthday. (*See id.*, ¶ 23-25.) According to the denial letter dated November 3, 2011, Huss did not take any action to enroll Joseph until Huss was preparing for her retirement, which was in 2006, two years after Joseph's 23rd birthday. (*See id.*, ¶ 23, 25.) Significantly, the supplemental affidavit submitted by Huss in 2011 claims only that Huss called to talk about Joseph's eligibility for coverage, not to actually enroll him in the Plan. (*Id.*) This distinction is critical, particularly given that no specific 2003-2004 discussion was claimed by Huss before the 2011 affidavit. The Seventh Circuit referenced, when talking about Huss testimony on the subject, "the uncertainty of Huss's testimony." *Huss*, 2011 U.S. App. LEXIS 7563 at *22-23. This, combined with the text of phone calls from October 26, 2004 through March 2010 makes it clear that Huss did not think she had enrolled Joseph in the Plan during this time period or previously back in 1998.

The denial letter provided three reasons for Defendants' determination. (*See id.*, ¶ 26.) First, Joseph was not enrolled in the Plan on his 23rd birthday. (*See id.*) The Plan Administrator concluded "since Joseph was not covered under the Plan in 2004 on his 23rd birthday, "continuation" of benefits was not possible." (*See id.*) The second basis for the Plan's denial of

9

Huss's claim was that there was no indication Huss had inquired before Joseph's 23rd birthday about continuous coverage for Joseph past his 23rd birthday. (*See id.*, ¶ 27.) Finally, the Plan Administrator concluded that a separate and independent ground for denying eligibility for Joseph beyond his 23rd birthday was that Huss was not enrolled in the Plan on Joseph's 23rd birthday as required by the 2003 SPD for Joseph to be enrolled. (*See id.*, ¶ 28.)

## III.   ARGUMENT

After an extensive review of the Administrative Record, including Huss's contacts with the ESC, the 2003 SPD, the Seventh Circuit opinion issued on April 13, 2011, Huss's personnel file, the affidavit of Manuel DeSilva, the IBM/Fidelity Relationship Manager, and Huss's supplemental affidavit dated October 15, 2011, Defendants reasonably denied Plaintiff's claim to enroll her son on the Plan. (Def. SMF, ¶¶ 8-28.) That decision was not arbitrary or capricious, but instead based upon the results of an extremely comprehensive and thorough evaluation process.

### A.   DEFENDANTS DID NOT ARBITRARILY OR CAPRICIOUSLY DENY HUSS BENEFITS, AND THEY ARE ENTITLED TO SUMMARY JUDGMENT

#### 1.   The Standard of Review Is Arbitrary and Capricious

Huss's challenge to the denial of benefits under § 1132(a)(1)(B) must fail unless she can prove that the denial was arbitrary and capricious. This is so because the Plan gives the Plan Administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Sisters of the Third Order v. Group Health Benefit Trust*, 901 F.2d 1369 (7th Cir. 1990).

Here, the Plan expressly states:

> The Plan Administrator has the sole discretion to make the final decision with respect to eligibility under the IBM Medical and Dental Plan. The decision will

take into account any factors determined to be relevant within the intent of the Plan and consistent with the tax-qualified status of the Plan.

(SMF, ¶ 7.)[3]   Through the discretionary language quoted above, Defendants retained sole discretion to render conclusive and binding decisions interpreting the Plan and eligibility for benefits under the Plan. (*See id.*) In the appeal of this instant matter, the Seventh Circuit applied the arbitrary and capricious standard based on the parties' agreement and its view of the Plan language. *Huss,* 2011 U.S. App LEXIS 7563 at 8-9. Accordingly, the "arbitrary and capricious" standard of review applies. *Cvelbar v. CBI Illinois, Inc.* 106 F.3d 1368, 1379 (7th Cir. 1997); *James v. Gen. Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000); *see also Houston v. Provident Life & Acc. Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004).

Under this standard, Defendants' decision to deny Joseph enrollment for benefits must be given great deference and left untouched unless the Court is convinced that the administrator "not only made the wrong call, but ... a downright unreasonable one." *James,* 230 F.3d at 317, citing *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990). A plan administrator's decision denying benefits is not "downright unreasonable" where:

> (1) it is possible to offer a reasonable explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Huss,* 2011 U.S. App. LEXIS 7563 at 8-9, *Ponsetti v. GE Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010).   As discussed below, the undisputed facts show conclusively that Defendants'

---

[3] A plan need not use "magic words" to give the administrator discretionary authority, but must contain clear language that indicates that a discretionary determination is envisioned. *New v. Verizon Communications, Inc.*, 2008 U.S. Dist. LEXIS 97231, *9 (N.D. Ill. Nov. 20, 2008); citing *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 486 n.5 (7th Cir. 2007) (noting the Seventh Circuit's "model clause," which grants discretion to the plan administrator and, therefore, limits judicial review of the administrator's decision).

determination to deny Huss's request to enroll her son, Joseph, in the Plan was not arbitrary, capricious or unreasonable.

### 2. Defendants' Decision Was Neither Arbitrary Nor Capricious

A plan administrator's decision is reasonable as long as it is supported by a reasoned explanation for a particular outcome, based on the evidence in the administrative record, plan documents, or other "relevant factors." *See Hess v. Hartford Life & Accident Ins. Co.,* 274 F.3d at 456, 461 (7th Cir. 2001). In reviewing such a decision for abuse of discretion, the Court does not substitute its judgment for that of the decision-maker; instead, if the decision was made rationally and with some basis in the administrative record, courts will not second-guess it. *See Highshue v. AIG Life Inc., Co.,* 135 F.3d 1144, 1147 (7th Cir. 1998). This deferential standard reflects the Court's general hesitancy to interfere with the administration of a benefit plan. *Id.*

Here, Defendants' decision to deny Huss's request to enroll Joseph in the Plan was reasonable, based on the plan documents and evidence in the administrative record. (Def. SMF, ¶¶ 8-28.) On remand from the Seventh Circuit, the Plan Administrator was ordered to determine whether Huss took necessary action on or before June 9, 2004 (60 days prior to Joseph's 23rd birthday on August 8, 2004), to ensure Joseph's continued eligibility for enrollment beyond age 23. *See Huss,* 2011 U.S. App. LEXIS 7536. In conducting the new analysis of Huss's appeal requesting coverage for her son Joseph as an eligible dependent under the 2003 SPD Plan, the Plan Administrator considered the prior administrative record and additional documents added to the record, including the transcripts of all of Huss's communications with the ESC from October 26, 2004 to the present, Huss's supplemental affidavit dated October 15, 2011, the Seventh Circuit opinion and the affidavit of Mr. DeSilva. (*See id.,* ¶¶ 8-28.)

12

After a thorough review of the supplemented administrative record and the 2003 SPD, the Plan Administrator concluded Huss had not sought to actually enroll Joseph prior to 60 days before his 23rd birthday. (*See id.*, ¶¶ 2-28.) In the denial letter, the Plan Administrator relied on three different provisions from the 2003 SPD in reaching her conclusion. (*See id.*, ¶¶ 23-28.) The Plan Administrator referenced each one of these passages from the Plan she deemed relevant to her decision and demonstrated why each passage was relevant. (*See id.*)

First, Joseph was not enrolled in the Plan on his 23rd birthday. (*See id.*, ¶ 26.) In the denial letter, IBM cited section 3.1.1.4 of the 2003 SPD, which provides in pertinent part:

> If you think your child will meet the above criteria at age 23, you *must* request continuation of IBM health benefits at least 60 days before his or her 23 birthday. To do so, call the IBM Employee Service Center.

(*See id.*) By her own admission, Joseph was not enrolled in the Plan in 2004. (*See id.*, ¶ 19.) Based on this admission and the plain language of the Plan, the Plan Administrator concluded "since Joseph was not covered under the Plan in 2004 on his 23[rd] birthday, "continuation" of benefits was not possible." (*See id.*, ¶¶ 19, 26.) This determination complies fully with the Seventh Circuit's holding that Joseph could not be enrolled in 2006 or 2007 if he had not been enrolled before his 23rd birthday.

The second basis for the Plan's denial of Huss's claim was that there was no indication Huss had sought to enroll Joseph before his 23rd birthday. (*See id.*, ¶¶ 12-22; 27.) The 2003 SPD provides eligibility for benefits for an over age 23 disabled dependent child of an employee as follows:

> Your mentally or physically disabled child who was eligible under the plans immediately before reaching age 23 ... and who, but for having reached age 23 would still be eligible, will be eligible to enroll upon attainment of age 23 (or in the case of a new employee, upon the employee's hire date) and thereafter to remain continuously eligible beyond the age of 23 if, at the time the child enrolls, IBM determines, on the basis of the child's condition at the time, that (1) he or

13

she is mentally or physically disabled, and (2) because of such mental or physical disability he or she is incapable of self-support, and (3) he or she is unmarried, and (4) he or she is principally dependent upon the employee for maintenance and support.

**If you think your child will meet the above criteria at age 23, you <u>must</u> request continuation of IBM health benefits at least 60 days before his or her 23 birthday. To do so, call the IBM Employee Service Center.** If you are a newly hired employee with a disabled child who has already reached age 23 at the time your employment begins, you should call to request this coverage within 60 days of your date of hire.

Any determination that a child qualifies for eligibility beyond age 23 will be reviewed periodically. Once any of the four conditions is not met by a child beyond the age of 23, coverage will be discontinued and will not be reinstated, even if later the child again meets all or any of the four conditions.

(*See id.*, ¶¶ 8-10) (emphasis added).

The Plan Administrator explained "the records reflect that Huss may have inquired about Joseph's eligibility for coverage under the Plan past his 23rd birthday in 1998, when Joseph was 17." (*See id.*, ¶¶ 12-22, 27.) But, the records do not contain any information establishing Huss inquired about Joseph's enrollment during the time he was covered under his father's plan until some time in 2006, about two years after Joseph's 23rd birthday. (*See id.*) The Plan carefully evaluated the representations made in Huss's supplemental affidavit submitted on October 15, 2011 in which she recalled calling the Plan sometime in January or February 2003, along with the statements she made to the CSS associates in January 2006, June 2006, November 2006, and January 2007. (*See id.*) During each of these conversations, Plaintiff admitted Joseph was not enrolled in the Plan in 2004, pinpointed the conversations about Joseph's eligibility to have occurred within the last year (that is, 2006 – 2007), and admitted the issue of eligibility would not have come up because Joseph was on her husband's Plan. (*See id.*) The Plan Administrator further explained that regardless of the communications Huss had before and/or after Joseph's

14

23rd birthday, Huss took no action to enroll Joseph for coverage in the Plan when required in 2004. (*See id.*, ¶¶ 19, 23-27.)

Finally, the Plan Administrator concluded that a separate and independent ground for denying eligibility for Joseph beyond his 23rd birthday was that Huss was not enrolled in the Plan on Joseph's 23rd birthday. (*See id.*, ¶ 28.) To support this basis for denial, the Plan Administrator cited to a provision of the 2003 SPD. (*See id.*) Specifically, Section 2. Personal Benefits Program, under 2.1 Benefits Enrollment provides:

> All eligible IBM employees, surviving spouses/domestic partners, and dependents must be enrolled in order to receive IBM medical, dental and vision benefits.
>
> Each year, during an enrollment period usually held in the fall, you will have the opportunity to elect coverage for yourself **and** any other eligible family members you wish to enroll for the upcoming plan year (normally January 1 through December 31). (emphasis added)

(*See id.*, ¶ 28.) According to the Plan Administrator, the ESC records reflect that Huss had coverage for herself and her dependents from 1976 through 1997 but was not covered under the Plan from 1998 through 2004. (*See id.*, ¶¶ 5-6.) Because Plaintiff was not enrolled in the Plan in 2004, Joseph, as a dependent could not have been enrolled in the Plan. (*See id.*, ¶¶ 5-6; 28.)

Based on the thorough denial letter provided to Huss, it is clear the Plan Administrator not only adequately considered the factors relevant to her decision, but she made a rational connection between the interpretive issue – Joseph's eligibility for benefits -- and the relevant plan documents. (*See id.*, ¶¶ 8-10, 12-28.) This is more than sufficient under the discretionary standard of review.

Even if the Plan Administrator's conclusion was a mistake, that alone is not enough to show that the decision was arbitrary, capricious and unreasonable. *See New,* 2008 U.S. App. LEXIS 97231 at *9. The record in this case contains substantial evidence supporting the Plan

Administrator's conclusion: Joseph was not enrolled in the Plan at the time he turned 23; Joseph was over the age of 23 in 2006 and 2007 when Plaintiff discussed his eligibility with the Plan representatives, as of sixty days before his 23rd birthday, June 9, 2004, Plaintiff had not requested coverage for Joseph past his 23rd birthday, and Plaintiff, herself, was not enrolled on the Plan at the time Joseph turned 23. (Def. SMF, ¶¶ 8-10; 12-28.)  Thus, Joseph was ineligible for enrollment in the Plan. (*See id.*)  Because Defendants' decisions were not unreasonable, this Court should enter summary judgment in Defendants' favor.

### B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS DID NOT ARBITRARILY OR CAPRICIOUSLY DENY HUSS BENEFITS

In her motion for summary judgment, Huss argues that Defendants' decision to deny Joseph enrollment in the Plan was arbitrary, capricious, and unreasonable because IBM no longer had any records of conversations between Huss and the ESC prior to 2004, therefore, Barnes was unable to consider the "best evidence." (*See* Pl.'s MSJ at 2-8.)  Huss further argues Defendants waived their right to challenge the enrollment status of Huss and Joseph in 2004 as a basis for denying Huss's claim because these conclusions were not raised prior to remand by the Seventh Circuit. (*See id.* at 11-12.)  In a footnote, Huss provides an alternate argument, should the Court determine that the enrollment status challenged was waived then Defendants are estopped from denying Joseph enrollment in the Plan because "authorized representatives of the Plan rendered an oral interpretation of the Plan". (*See id.* at 8-10.)  Finally, Huss espouses that Defendants cannot permanently bar Joseph from the Plan based on Huss's failure to comply with a ministerial requirement. (*See id.* at 12-14.)

Contrary to Huss's arguments and for the reasons discussed below, the undisputed facts show conclusively that Defendants' determination to deny Huss's request to enroll her son on the Plan was neither arbitrary, nor capricious, nor otherwise unreasonable.

1.  **Defendants' Failure to Retain Telephonic Records Does Not Establish Defendants' Decision Was Arbitrary, Capricious and Unreasonable.**

Huss argues Defendants cannot refute her affidavit regarding her alleged 2003 or 2004 telephone call to the Plan and, because IBM allowed the telephone recordings paramount to this case to be destroyed, the Plan Administrator's denial of her claims was unreasonable. (*See* Pl.'s MSJ at 2-8.) Plaintiff raises the possibility that Defendants had access to tape-recorded telephone conversations between Plaintiff and the ESC dating back to 2000, at the time this lawsuit was initiated, as evidence that the Plan Administrator's determination was unreasonable. (*See id.*) Plaintiff's focus on these allegedly destroyed tape-recorded telephone conversations is an attempt to distract this Court from her own lack of evidence demonstrating that she contacted the ESC at least 60 days before Joseph turned 23 to obtain coverage for him.

To address Plaintiff's contention about tape recorded calls to the ESC, a timeline is helpful. In summary, it was not until Huss's 2011 affidavit that she alleged specific calls in 2003-2004, making retention of such calls immaterial. (A.R. D3062-D3065; Doc. No. 23.) The timeline begins with January 1, 1998 through December 31, 2004, a time when the Huss family had no coverage under the Plan and was covered by the plan of Huss's husband's employer. (Def. SMF, ¶¶ 5, 19.) The Complaint and Amended Complaint, filed December 14, 2007 and April 3, 2008, respectively, mention only the possibility of calls "in 2005 or early 2006." (Doc. No. 1, ¶ 9; Doc. No. 23, ¶ 9). There is no mention of any alleged call in 2003 or 2004. (*See id.*) The appeal letters from Huss's counsel, dated June 12, 2007 references calls beginning in August 2006. (Doc. No. 1, Ex. 1; Doc. No. 23, Ex. 1.)

Following the remand of this matter to the Plan Administrator, calls were retrieved from October 26, 2004 to the last one in March 2010. (A.R. D2899-D2903, ¶ 6, Ex A.) This was based on the seven-year retention policy of Fidelity which maintained the call center since 2002.

17

(*Id.*)  Thus, when Huss made a vague claim in her 2011 supplemental affidavit that she now thinks she had a call before 2006, a request was made to Fidelity and the resulting information and text of telephone calls was provided to the Plan Administrator for review.  There was no destruction of material evidence at all, and Plaintiff's own allegations throughout this matter do not support any basis for this.

Further, in her supplemental affidavit submitted on October 15, 2011, Plaintiff maintains she contacted the IBM Plan to request Joseph's continued eligibility for dependent benefits in February 2003 and bases this assumption on a letter she received from her husband's employer's plan dated February 13, 2003.  (A.R. 3064.)  This letter addresses Joseph's continued eligibility for coverage under Huss's husband's plan and makes no reference to the IBM Plan and/or any communication between Huss and the IBM Plan.  (A.R. D3066.)  Although Plaintiff cannot identify a specific date on which she contacted the IBM Plan, she says this letter is proof that she would have contacted the IBM Plan during that same time period.  (A.R. D3062-D3066.)  Huss's affidavit is nothing more than speculation and conjecture of what she may have done in February 2003.  In fact, one could equally speculate that upon receiving the letter from her husband's plan indicating her son would have benefits coverage for his lifetime, Plaintiff would have had no reason to contact IBM to inquire about lifetime coverage for her son under the Plan.  To defeat summary judgment, she must do more than raise some metaphysical doubt as to the material fact; she must come forward with specific facts showing that there is a genuine issue.  *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008), citing *Keri v. Bd. of Trs. F Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2007).

Here, Huss fails to point to a specific fact that she contacted the IBM Plan prior to Joseph's 23rd birthday to secure his continued eligibility.  Instead, Huss concentrates on alleged

actions of the Plan in failing to preserve recordings of all communications between Huss and the ESC for the length of the Company's retention period to support her speculative assertions that she contacted the ESC in 2003. (*See* Pl.'s MSJ at 2-8.) Huss further argues that any destruction of documents by Defendants was done in bad faith. (*See id.*)

The destruction of evidence presumption has two elements: (1) the totality of the circumstances must show that the destruction was in bad faith; and (2) if the first prong is met, then the Court may infer from this state of mind that the contents of the evidence would be unfavorable to the party if introduced in Court. *See SEC v. Garcia, et al.*, 2011 U.S. Dist. LEXIS 148623, * 28-29 (N.D. Ill. Dec. 28, 2011). As such, "a defendants destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced would have contained information adverse to the Defendants case." *See id.*, citing *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). The Seventh Circuit has equated "bad faith" to the destruction of documents "for the purpose of hiding adverse information." *See id.*, citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). "Thus, the crucial element is not that the evidence was destroyed but rather the reason for the destruction." *Id.*, citing *Park*, 297 F.3d at 615.

Here, however, Huss has not produced any evidence such that we can infer any conversations took place between Huss and the ESC prior to Joseph's 23rd birthday, other than the conversation in 1997 (at a time Joseph was 16 years old) when Plaintiff changed coverage from the IBM Plan to her husband's plan. Huss's supplemental affidavit does <u>not</u> establish that there was in fact a tape-recorded conversation from February 2003 to destroy or the intentions of Defendant to destroy such evidence because the affidavit is based on her own recently created speculation and conjecture. As the Seventh Circuit opined in *Rummery v. Ill. Bell. Tel. Co.*, 250

F.3d 553, 558 (7th Cir. 2001), a party seeking to rely on destroyed evidence must provide more than mere speculation that the documents contained adverse information.

Although Huss believes a call occurred, as discussed above, she cannot identify a date on which it occurred, what was said between the parties, or what the Plan required. And, her own statements in 2006 and 2007 belie the assertions put forth in her recent affidavit. Critically, as discussed above, Huss admitted that discussions about Joseph's eligibility would not have come up because he was on her husband's plan and she only started asking about it when she was inquiring about her retirement would affect her benefits. Therefore, Defendants decision that Joseph was not eligible for enrollment on the Plan because Huss failed to take appropriate action prior to his 23rd birthday is not arbitrary, capricious or unreasonable.

## 2.    The Plan Language Controls Eligibility for Enrollment in the Plan

Huss maintains Defendants' decision was unreasonable because Defendants provided new bases for denying Huss's claim, specifically that neither Joseph nor Huss were enrolled in the Plan at the time Joseph turned 23rd as required by the Plan, while on remand. Huss argues Defendants waived their right to raise these bases because they were not raised on appeal. (*See* Pl.'s MSJ at 8-12.) Contrary to Plaintiff's claim, remand provides the Plan Administrator with an opportunity for additional review consistent with the Court's direction in order to provide further findings or explanations for the benefits determination. *See Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 477 (7th Cir. 1998). Here, the Seventh Circuit concluded that the Plan Administrator based her denial on the incorrect Plan document and remanded the claim back to the Plan Administrator to "fully develop the record" for further review under the 2003 SPD. *See Huss*, 2011 U.S. App. LEXIS 7536 at 22-23. Thus, any conclusions reached by the

20

Plan Administrator while on remand are not waived because the Plan Administrator was tasked with analyzing Huss's conduct in connection with a new Plan document.

On remand, the Plan Administrator correctly concluded that Huss's failure to enroll Joseph on the Plan prior to his 23rd birthday and her own failure to enroll herself in the Plan prior to Joseph's 23rd birthday are fatal to his eligibility for continued benefits. (Def. SMF, ¶¶ 23-28.) The plain language of the 2003 SPD is clear that enrollment in the Plan is tantamount to continued eligibility. (*See id.* at 26.) As the Seventh Circuit held, the plain language of the 2003 SPD undermines the premise that eligibility continues automatically for disabled adult children who are not already enrolled. *See Huss*, 2011 U.S. App. LEXIS 7536 at 14.

Here, both Huss and Joseph were not enrolled in the Plan prior to his 23rd birthday. (Def. SMF, ¶¶ 5-6, 19.) As discussed above, there is no evidence that Plaintiff was enrolled 60 days prior to Joseph's 23rd birthday as required in order to then enroll Joseph. (*See id.*, ¶¶ 12-22.) The plain language of the Plan document supports the decision to deny Joseph enrollment in the Plan. (*See id.*, ¶¶ 8-10.) Therefore, the decision was not arbitrary, capricious or unreasonable.

### 3. The *Bowerman* Decision Does Not Establish that Defendants' Decision Was Arbitrary, Capricious, or Unreasonable

Huss next argues that if Defendant's new additional basis for denying Joseph eligibility is not waived, Defendants are estopped from denying Joseph enrollment in the Plan. (*See* Pl.'s MSJ at 8-10.) Relying on *Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574 (7th Cir. 2000), Huss asserts that the alleged misstatements by the Customer Service Specialists employed in the IBM Service Center are imputed to the Plan Administrator because they provided materially misleading information to Huss, upon which she detrimentally relied. (*See id* at 10, fn2.)

The facts in this case are readily distinguishable from those in *Bowerman.* In *Bowerman,* the plaintiff filed a lawsuit against Wal-Mart alleging that Wal-Mart, through the Plan,

wrongfully denied her benefits and that she was therefore entitled to recover those benefits pursuant to 29 U.S.C. §1132(a)(1)(B). *Bowerman,* 226 F.3d at 583. The *Bowerman* plaintiff alternatively alleged that Wal-Mart breached its fiduciary duties under ERISA by not timely informing her of the consequences of failing to elect COBRA coverage for the approximately one month that she was not working at Wal-Mart. *Id.* Based on ambiguous plan provisions and materially misleading responses to plaintiff's inquiries on which plaintiff reasonably relied, the Seventh Circuit concluded that Wal-Mart should be estopped from denying coverage for plaintiff and granted plaintiff's claim for benefits under §1132(a)(1)(B). *See id.* at 589. The Court reasoned that it was the representation of the service representative that caused plaintiff to have the fatal break in her coverage. *See id.*

Here, unlike in *Bowerman*, the written Plan document provided accurate information (Def.'s SMF, ¶¶ 8-10); the oral statements were not knowing misrepresentations (*See id.*, ¶¶ 12-22); and the written Plan document was clear that in the event of a conflict between the terms of the Plan and the information provided by the CSS associates, the Plan document would control (*See id.*, ¶ 7.) Additionally, in *Bowerman* the oral misrepresentations caused plaintiff not to make the COBRA payment and, therefore, to lose coverage. In contrast, the misrepresentations alleged here occurred several years <u>after</u> the relevant deadline had passed (Joseph's 23rd birthday in August 2004), and thus they could have no material consequence to Plaintiff's rights. (*See id.*, ¶¶ 12-22.) Therefore, Plaintiff's reliance on *Bowerman* fails to advance her argument that Defendants' determination was arbitrary, capricious or unreasonable, and Defendants are entitled to summary judgment.

4.    **Defendants' Decision that Joseph is Not
          Eligible for Enrollment in the Plan is Not Inequitable**

Finally, Plaintiff challenges the equity in Defendants' decision. (Pl.'s MSJ at 12-14.) Relying on *Dudek v. Midwest Operating Eng. Pension Trust Fund*, 2003 U.S. Dist. LEXIS 20962 (N.D. Ill. Nov. 19, 2003), Plaintiff asserts that permanently barring Joseph from receiving medical benefits for Huss's failure to comply with a ministerial submission of a request for continued eligibility was unjust and arbitrary and capricious. (*See id.*) *Dudek* is readily distinguishable from this case.

In *Dudek,* Plaintiff filed suit against Midwest Operating Engineers Pension Trust Fund ("Midwest"), alleging Midwest incorrectly determined his eligibility date for retroactive benefits under the Plan. *See Dudek*, 2003 U.S. Dist. LEXIS 20962 at 1-4. The Court concluded that in interpreting the terms of the Plan, the applicable Plan provisions relied upon by the Plan Administrator in determining the eligibility date for Plaintiff's benefits, did not contain language that the failure to submit an application will result in the retroactive loss of benefits for which the employee was entitled. *See id.* at 14. The Court explained that the Plan Administrator relied upon language contained in a different provision of the Plan to support denial of retroactive benefits and that decision was arbitrary and capricious. *See id.*

Here, unlike in *Dudek*, the written Plan language is clear that a condition precedent is required for continued coverage under the Over Age 23 Disabled Dependent Adult provision. (Def. SMF, ¶¶ 8-10.) As the Seventh Circuit explained, the provisions of the 2003 SPD "undermine the premise that eligibility continues automatically for disabled adult children who are not already enrolled." *Huss,* 2011 U.S. App. LEXIS 7563 at 14. And, as discussed above, Huss failed to take the appropriate steps to secure Joseph's continued eligibility for enrollment on the Plan prior to his 23rd birthday. Therefore, Plaintiff's reliance on *Dudek* fails to advance

her argument that Defendants' determination was arbitrary, capricious or unreasonable, and Defendants are entitled to summary judgment.

## IV.    CONCLUSION

The undisputed evidence, viewed in the light of the arbitrary and capricious standard, leaves no question that Defendants properly reviewed the facts presented in the Administrative Record, and reasonably interpreted the relevant provisions of the 2003 SPD in denying Plaintiff's claim.  It is plain, moreover, that Defendants' determination has "rational support in the record."  *Davis v. Unum Life Ins. Co.,* 444 F.3d 569, 576 (7th Cir. 2006). Under such circumstances, "[q]uestions of judgment are left to the plan administrator … and it is not [the Court's] function to decide whether [it] would reach the same conclusion as ["Defendants]." *Id.* (internal quotations and citations omitted). Accordingly, Plaintiff's motion for summary judgment should be denied, and the Court should grant judgment in Defendants' favor.

Dated: May 2, 2012

**IBM MEDICAL AND DENTAL PLAN and R.A. BARNES, in her capacity as Plan Administrator**

By:   /s/ Ashley B. Abel
        Ashley B. Abel
        One of Defendants' Attorneys

Sara A. Weinberg
(weinbergs@jacksonlewis.com)
Jackson Lewis LLP
150 North Michigan Ave., Suite 2500
Chicago, Illinois 60601
Telephone:  312/787-4949
Facsimile:  312/787-4995

Ashley B. Abel (abela@jacksonlewis.com)
Jackson Lewis LLP
One Liberty Square
55 Beattie Place, Suite 800
Greenville, SC  29601-2122
Telephone:  864/232-7000
Facsimile:  864/235-1381

## CERTIFICATE OF SERVICE

I, Ashley B. Abel, an attorney, certify that on the 2nd day of May 2012, I caused a true and correct copy of the foregoing Defendants' Brief in Support of Summary Judgment and Incorporated Brief in Opposition to Plaintiff's Motion for Summary Judgment to be filed with the Court by the Court's ECF/CM electronic filing protocols, that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system:

Paul F. Heaton
Heaton Trial Law, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202

William G. Beatty
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603


_____ /s/ Ashley B. Abel _____

4833-2966-4271, v. 2